**UNITED STATES of America, Appellee,**

v.

**McClellan CHATMAN, Appellant.**

**No. 91–3294.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1992.

Decided March 16, 1993.

Neil H. Jaffee, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender, was on the brief, for appellant.

Steven N. Berk, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Steven W. Pelak, Asst. U.S. Attys., were on the brief, for appellee.

Before: EDWARDS, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Concurring opinion filed by Circuit Judge D.H. GINSBURG.

HARRY T. EDWARDS, Circuit Judge:

McClellan Chatman, who pled guilty in the District Court to bank robbery in viola-tion of 18 U.S.C. § 2113(a) (1988), appeals his sentence of 37 months' incarceration. At the sentencing hearing, the District Court rejected Chatman's request for a downward departure in his sentence pursuant to section 5K2.13 of the United States Sentencing Guidelines ("Guidelines"), which permits sentence reductions for "non-violent offense[s]" where the defendant suffers from a "significantly reduced mental capacity" that contributed to commission of the crime. U.S.S.G. § 5K2.13 (1992). The District Court held that no departure was authorized under section 5K2.13, because Chatman used a threatening note in the commission of the robbery. However, it appears that the District Court underestimated the amount of discretion available to it in a sentencing decision involving section 5K2.13. Accordingly, we vacate Chatman's sentence and remand the case to the District Court for resentencing.

## I. BACKGROUND

On April 22, 1991, Chatman robbed $1,400 in cash from a bank in Washington, D.C. Chatman, unarmed and acting alone, took a taxi cab to the bank and told the driver to wait for him. Chatman then entered the bank, gave a teller a note and told her to read it. The note demanded $20,000 in cash, and further stated, *"[n]o one will be hurt, don't do anything foolish. People will get hurt if I don't walk out of this bank. There are four of us."* [1]

The teller gave Chatman an envelope containing $1,400 and an exploding dye pack. Chatman left the bank without incident with the money in hand; however, the dye pack exploded as he was about to enter the awaiting taxi cab. Chatman then fled into a nearby building. When he realized he was trapped, he voluntarily surrendered to the police.

Chatman subsequently pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). At his sentencing hearing before the trial court, Chatman sought a downward departure from the applicable Guidelines sentencing range of 37 to 46

---

**1.** Transcript of Plea Hearing (June 27, 1991) at 10 (emphasis added).

months' incarceration. Chatman based this request on section 5K2.13 of the Guidelines, a policy statement that allows a downward departure in a situation in which a defendant has committed a "non-violent offense" while suffering from diminished mental capacity. Specifically, section 5K2.13 provides:

> If the defendant committed *a non-violent offense* while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13 (emphasis added). Chatman offered evidence of his diminished mental capacity in the form of a psychological evaluation prepared by a licensed psychologist. Chatman also argued that his crime was a "non-violent offense," because he had no weapon when he committed the robbery, no one was harmed as a result of the robbery, and the note he had given the teller was, he asserted, merely an idle threat.

The District Court refused to grant Chatman a downward departure, ruling as follows:

> As to diminished capacity, I agree with the government that looking at the facts of this case, this was a crime of violence. The defendant presented a threatening note to the teller; there was no way for the teller to know that it was an idle threat.
>
> I agree with the defendant that no force was used, other than the threat in the note, and that he did surrender voluntarily when confronted by the police, and that he did not, in fact, use any force other than the threatening note. But the threatening note itself is an act of violence, making this a crime of violence, and the downward departure for diminished capacity is therefore inapplicable.

I therefore do not reach the question, if the Court of Appeals ultimately determines that the downward departure would be applicable, as to what downward departure would be appropriate because I rule as a matter of law that the downward departure would not be granted because it was an act of violence in handing the threatening note to the teller.[2]

The court then sentenced Chatman to 37 months' imprisonment and two years of supervised release. Chatman appeals this sentence.

## II. DISCUSSION

On appeal, Chatman argues that the District Court incorrectly applied the Guidelines. Chatman contends that the District Court erred in holding that, "as a matter of law," the use of a threatening note in the commission of an unarmed bank robbery precludes the robbery from being considered a "non-violent offense" under section 5K2.13. We agree, and remand the case for resentencing in light of our opinion.

■ Where, as here, the District Court has refused to depart from the Guidelines because the court believed it lacked authority to do so, and not because it merely refrained from exercising its discretion, the decision is subject to appellate review. *See United States v. Hazel,* 928 F.2d 420, 423 (D.C.Cir.1991) ("we may review the judge's decision to depart (or not to depart) where it is evident that the judge misunderstood the scope of his sentencing authority under the guidelines"); *United States v. Poff,* 926 F.2d 588, 591 (7th Cir.) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991) ("a decision not to depart is reviewable on appeal if it is the product of a conclusion that the judge lacks authority to depart").

### A. *The Meaning of "Non–Violent Offense" Under Section 5K2.13*

■ The primary question raised by this appeal, a question of first impression in this circuit, is how the term *"non-violent*

**2.** Transcript of Sentencing Hearing (Oct. 28, 1991) at 11–12 ("Sentencing Tr.").

*offense"* under section 5K2.13 should be interpreted and applied. The term is not defined in section 5K2.13 or anywhere else in the Guidelines, nor does section 5K2.13 provide examples of "non-violent offense[s]." To give content to that term, a number of courts have looked to the definition of *"crime of violence"* found in section 4B1.2 of the Guidelines, which serves as part of the sentence-enhancement scheme for "career offenders."[3] *See, e.g., Poff,* 926 F.2d at 591–92 ("crime of violence" under section 4B1.2 and "non-violent offense" under section 5K2.13 are mutually exclusive terms); *United States v. Rosen,* 896 F.2d 789, 791 (3d Cir.1990) (same); *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989) (same). In contrast, the five dissenting judges in the Seventh Circuit's *en banc* decision in *Poff* embraced the view that the District Court's discretion to depart downward under section 5K2.13 should not be bound by section 4B1.2. *See Poff,* 926 F.2d at 594 (Easterbrook, J., dissenting). At least two courts implicitly share the position of the *Poff* dissenters. *See United States v. Philibert,* 947 F.2d 1467, 1471 (11th Cir.1991) (interpreting section 5K2.13 without considering its relationship to section 4B1.2); *United States v. Spedalieri,* 910 F.2d 707, 711 (10th Cir. 1990) (same). We think the dissent in *Poff* represents the better reasoned approach.

The *Poff* majority, which the Government asks us to follow, based its decision to rely on section 4B1.2 on several factors. The court primarily emphasized the similarity of the language in the terms "crime of violence" and "non-violent offense," concluding that "[t]he natural reading of [the two] terms suggests that they are contrapositives...." 926 F.2d at 592. Moreover, the court opined that had the Sentencing Commission meant to give "non-violent of-

fense" a meaning unrelated to "crime of violence," it would have given some indication of this intention. *See id.* The court also expressed concern that without the constraints of section 4B1.2, courts charged with interpreting section 5K2.13 would be left with "little [to do] but guess as to its meaning." *Id.* The other circuits that take the view that section 4B1.2 controls the application of section 5K2.13 add little to the *Poff* court's analysis. *See, e.g., United States v. Maddalena,* 893 F.2d 815, 819 (6th Cir.1989) (relying on section 4B1.2 without explanation); *Rosen,* 896 F.2d at 791 (relying on section 4B1.2 because court could "find no support" for different interpretation of section 5K2.13).

There is a compelling argument that Chatman would be barred from seeking a downward departure under section 5K2.13 if "crime of violence" in section 4B1.2 is viewed as the contrapositive of "non-violent offense" in section 5K2.13. *See United States v. Jones,* 932 F.2d 624, 625 (7th Cir.1991) (bank robbery in violation of section 2113(a) is necessarily a "crime of violence" under section 4B1.2); *United States v. Selfa,* 918 F.2d 749, 751 (9th Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990) (same); *United States v. McVicar,* 907 F.2d 1, 1 (1st Cir.1990) (same). Indeed, two Ninth Circuit decisions applying section 4B1.2 to section 5K2.13 have held that a defendant convicted of unarmed bank robbery in violation of section 2113(a) is not eligible for a downward departure pursuant to section 5K2.13. *See United States v. Sanchez,* 933 F.2d 742, 747 (9th Cir.1991); *Borrayo,* 898 F.2d at 94. This conclusion rests primarily on two components of section 4B1.2. First, Application Note 2 of section 4B1.2 expressly lists "robbery" as a "crime of violence."[4] *See McVicar,* 907 F.2d at 1; *Bor-*

---

**3.** *See* U.S.S.G. § 4B1.1 (1992) (defining "career offender"). Under section 4B1.2, a "crime of violence"

    means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

      (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

      (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1) (1992).

**4.** Although "bank robbery" is not an expressly listed offense, separate from "robbery," the Guidelines assume that "robbery" encompasses "bank robbery." Under section 2B3.1 of the

*rayo*, 898 F.2d at 94. Second, the term "crime of violence" includes any offense that "has as an *element* the use, attempted use, or threatened use of physical force" against another person. U.S.S.G. § 4B1.2(1)(i) (emphasis added).

According to some courts, the use of the word "element" suggests that the Sentencing Commission intended that a crime be characterized as one "of violence" within the meaning of section 4B1.2 if any one of the crime's statutory elements involves merely the "threatened use of physical force" against a person, *regardless* of the specific facts of the crime. *See, e.g., United States v. Wilson*, 951 F.2d 586, 588 (4th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2294, 119 L.Ed.2d 218 (1992). Pursuant to this interpretation, unarmed bank robbery as defined in section 2113(a), which includes the requirement that an individual act "by force and violence, or by intimidation," 18 U.S.C. § 2113(a), has been read as necessarily constituting a "crime of violence." *See Selfa*, 918 F.2d at 751. On the force of this precedent (and in disregard of this circuit's precedent, *see* notes 6–7, *infra*), the Government asks us to hold that Chatman has committed a "crime of violence" within the meaning of section 4B1.2, that the crime thus cannot be a "non-violent offense" under section 5K2.13, and that Chatman therefore is ineligible for a downward departure for "significantly reduced mental capacity."

█ We reject the Government's position because we are not persuaded that section 4B1.2 should govern the application of section 5K2.13. Rather, we believe that the sentencing court has broad discretion under section 5K2.13 to examine all the facts and circumstances of a case to determine whether a particular offense was in fact "non-violent." Several considerations lead us to this conclusion.

We start with the text and structure of the Guidelines. Nothing in the Guidelines themselves or in the Application Notes suggests that section 4B1.2 is meant to control

the interpretation and application of section 5K2.13. We recognize that some courts have taken this silence as supporting the decision to rely on section 4B1.2. *See, e.g., Borrayo*, 898 F.2d at 94 ("[b]ecause 'non-violent offense' is not defined in the guidelines, we defer to the definition of 'crime of violence'...."). But we think the *Poff* dissent has the better argument. As noted there, the Guidelines and their associated commentary

> were written as a unit ... and with greater than customary attention to the relation among sections.... Amendments numbering [473] over [five] years attest to a continuous effort to make the text and notes an integrated whole.... It would have been easy to write § 5K2.13 to say that the judge may depart unless the defendant committed a 'crime of violence' as § 4B1.2 defines it; instead the Commission selected different formulations. Although it laid out a detailed meaning for "crime of violence" in § 4B1.2, it did not provide so much as a cross-reference in § 5K2.13, a curious omission if the Commission meant to link these phrases so tightly that they are mutually exclusive.

*Poff*, 926 F.2d at 594 (Easterbrook, J., dissenting).

The lack of a cross-reference is all the more significant because so many of the Guidelines use explicit cross-referencing. For instance, the definition of "crime of violence" in section 4B1.2 is expressly adopted by section 4A1.1 (which guides computation of the criminal history category in the Sentencing Table). *See* U.S.S.G. §§ 4A1.1(f), 4A1.2(p) (1992). Moreover, the Commission has amended section 4B1.2 and its commentary twice in the last two years, and neither time did the Commission suggest any relationship between section 5K2.13 and section 4B1.2. *See* United States Sentencing Commission Guidelines Manual, Appendix C 253–54, 284–85 (1992) (amendments 433, 461). The *Poff* majority took the Commission's failure to mention

---

Guidelines, which assigns offense levels to various forms of "robbery," a sentencing court is instructed to increase the offense level by a

certain number of points "[i]f the property of a financial institution ... was taken...." U.S.S.G. § 2B3.1(b)(1) (1992).

section 5K2.13 in these amendments as approval for the conclusion that section 4B1.2 governs section 5K2.13, *see Poff,* 926 F.2d at 593, but that position rested on the erroneous belief that the courts of appeals have uniformly adopted the view espoused by the *Poff* majority. *See Spedalieri,* 910 F.2d at 711 (discussing application of section 5K2.13 without mentioning section 4B1.2).

Second, significant policy concerns support the view that section 5K2.13 and section 4B1.2 should be interpreted independently, for the sections address entirely different issues—a factor that has not been considered in most opinions construing section 5K2.13. *But see Poff,* 926 F.2d at 594–95 (Easterbrook, J., dissenting). Section 4B1.2 involves a determination as to whether an individual is a "career offender" and should therefore receive a higher sentence than others who have committed the same offense. *See* 28 U.S.C. § 994(h) (1988). In section 994(h), Congress directed the Commission to ensure that the Guidelines specify prison sentences that are "at or near the maximum term authorized" for "career offenders," which include those who have "been convicted of a felony that is either a crime of violence or a drug offense and who ha[ve] been previously convicted of two felonies where each was either a 'crime of violence' or a drug offense. 28 U.S.C. § 994(h)." *United States v. Baskin,* 886 F.2d 383, 389 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990). Longer sentences for such offenders are justified by the purposes of incarceration, as set out in 18 U.S.C. § 3553(a)(2) (1988)[5] and discussed in the Introductory Commentary to Part A of Chapter 4 of the Guidelines. Specifically,

> [a] defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence

of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.

U.S.S.G. Ch. 4, Pt. A, Introductory Commentary (1992). Furthermore, longer sentences guarantee incapacitation of those repeat offenders whose past records suggest a propensity to commit violent crimes. *See* 128 Cong.Rec. 26,518 (1982) (statement of Sen. Kennedy) (stating, in introducing progenitor of 28 U.S.C. § 994(h), that "[s]hrinking law enforcement resources must be targeted on incapacitating" those who repeatedly commit violent crimes) (cited in U.S.S.G. § 4B1.1 (Background Note) (1992)).

Reflecting these policy concerns, the definition of "crime of violence" in section 4B1.2 is a distinctively crafted "term of art," *Poff,* 926 F.2d at 594 (Easterbrook, J., dissenting), designed to identify career offenders. The definition extends not only to crimes that involve actual violence, but to many crimes that have an "unrealized prospect of violence" as well. *Id.* For example, as noted above, several courts have held that any crime that has a statutory element that includes the "threatened use of physical force" is necessarily a "crime of violence" under section 4B1.2, regardless of the facts surrounding the crime. *See, e.g., Wilson,* 951 F.2d at 588. In short, section 4B1.2 can be read as depriving career offenders of the benefit of the doubt, and assuming the worst. In the service of identifying particular trends within an individual's criminal history, section 4B1.2 appears to characterize as "crimes of violence" many offenses that, taken individually on their facts, might be interpreted as non-violent.[6]

But the policy concerns that motivate the definition of "crime of violence" in section 4B1.2 are not applicable to section 5K2.13.

---

**5.** These purposes include, *inter alia,* (1) "to provide just punishment;" (2) to deter criminal conduct; and (3) "to protect the public from further crimes of the defendant...." 18 U.S.C. § 3553(a)(2).

**6.** Our observation in this regard might be read as implicitly questioning our decision in *Baskin,*

886 F.2d at 389 (holding that a sentencing judge retains discretion to examine the underlying facts of a case in deciding whether an offense is a "crime of violence" under section 4B1.2). We do *not* address the validity of *Baskin* in this case.

Section 5K2.13 confers discretion on the trial court to consider downward departures where an individual suffers from a "significantly reduced mental capacity" that contributed to the commission of a "non-violent offense." In contrast to the purposes of section 4B1.2, the point of section 5K2.13 is to treat with lenity those individuals whose "reduced mental capacity" contributed to commission of a crime. Such lenity is appropriate in part because, as Judge Easterbrook points out, two of the primary rationales for punishing an individual by incarceration—desert and deterrence—lose some of their relevance when applied to those with reduced mental capacity. As to desert, "[p]ersons who find it difficult to control their conduct do not—considerations of dangerousness to one side—deserve as much punishment as those who act maliciously or for gain." *Poff,* 926 F.2d at 595 (Easterbrook, J., dissenting). Further, "[b]ecause legal sanctions are less effective with persons suffering from mental abnormalities, a system of punishment based on deterrence also curtails its sanction." *Id.* Indeed, those defendants whose "significantly reduced mental capacity" is caused by the "voluntary" use of "drugs or other intoxicants" are logically excluded from consideration under section 5K2.13 because they have "diminished" their capacity by choice, and "legal threats may induce them to abandon their habits...." *Id.*

Section 5K2.13 must be interpreted in light of the fact that, with the decreased relevance of deterrence and desert, incapacitation becomes the primary rationale for incarcerating those whose crimes were committed as a result of "significantly reduced mental capacity."

Consider why "significantly reduced mental capacity" ever should be a ground for lenience. It is not that persons suffering from conditions short of legal insanity are not dangerous; they may be very dangerous and, because of the mental condition, effectively undeterrable. A hefty sentence may be appropriate simply because it incapacitates and so reduces the likelihood of further offenses.

*Id.* at 594–95. Consistent with this analysis, a downward departure under section 5K2.13 is disallowed where "the defendant's criminal history ... indicate[s] a need for incarceration to protect the public." U.S.S.G. § 5K2.13. But when an individual with "significantly reduced mental capacity" does not pose a danger to the public, and thus does not need to be incapacitated, that individual is eligible for a downward departure.

Considered in this context, the term "non-violent offense" in section 5K2.13 refers to those offenses that, in the act, reveal that a defendant is not dangerous, and therefore need not be incapacitated for the period of time the Guidelines would otherwise recommend. *See Poff,* 926 F.2d at 595 (Easterbrook, J., dissenting) (under section 5K2.13, "when incapacitation is not an important justification for punishment, mental condition may be the basis of a departure"). A determination regarding the dangerousness of a defendant, as manifested in the particular details of a single crime that he or she has committed, is best reached through a fact-specific investigation. We therefore believe that a District Court, when deciding whether a particular crime qualifies as a "non-violent offense," should consider all the facts and circumstances surrounding the commission of the crime.

A brief examination of the *Poff* case reveals that the fact-specific approach to interpreting the term "non-violent offense" furthers the purpose behind section 5K2.13, while relying on section 4B1.2 to give content to section 5K2.13 defeats that purpose. In *Poff,* a mentally disturbed woman was convicted of writing threatening letters to the President (at the behest, she claimed, of her deceased father) in violation of 18 U.S.C. § 871 (1988). The Seventh Circuit held that a downward departure under section 5K2.13 was unavailable to the defendant. Persuaded that section 4B1.2 governs section 5K2.13, the court concluded that the defendant's crime was a "crime of violence" under section 4B1.2 because, as defined, the cited crime involves the "threatened use of physical force against"

another person. U.S.S.G. § 4B1.2(1)(i); *see Poff,* 926 F.2d at 591. On the record of the case, however, it appeared that the defendant neither intended nor was able to carry out her threats, suggesting that, in fact, her crime was a "non-violent offense." In such an instance, where incapacitation would serve little purpose (and where, as noted, desert and deterrence play a reduced role), it seems highly implausible that the Sentencing Commission intended to *prohibit* a downward departure under section 5K2.13. But the *Poff* majority reached that result by importing the meaning (and, inadvertently, the stringent policies) of section 4B1.2 into section 5K2.13. We refuse to adopt such an approach to interpreting section 5K2.13, for it is neither required, nor even suggested, by the Guidelines.

■ In sum, based on the language and structure of the Guidelines, and the differing policy rationales underlying section 5K2.13 and section 4B1.2, we hold that a court that is considering whether a departure is warranted under section 5K2.13 is not in any way bound by the definition of "crime of violence" under section 4B1.2.[7] Rather, the sentencing court must consider all the facts and circumstances of a case in deciding whether a crime is a "non-violent offense" under section 5K2.13 of the Guidelines.[8]

B. *Application of Section 5K2.13 to Appellant's Sentence*

Having determined that section 4B1.2 should not control the District Court's application of section 5K2.13, we turn to the

decision of the District Court in the case before us. It is unclear, based on the sentencing transcript, how the District Court applied section 5K2.13 in this case. In deciding that a downward departure under section 5K2.13 was not available to the defendant, the court stated:

As to [section 5K2.13], I agree with the government that looking at the facts of this case, this was a *crime of violence.* The defendant presented a threatening note to the teller; there was no way for the teller to know that it was an idle threat.

I agree with the defendant that no force was used, other than the threat in the note, and that he did surrender voluntarily when confronted by the police.... But the threatening note itself is an act of violence, making this a *crime of violence....* I rule as a matter of law that the downward departure [cannot] be granted....[9]

The District Court's reference to "the facts of this case" might lead one to conclude that the court considered the circumstances of Chatman's crime before deciding that section 5K2.13 did not authorize a departure. We recognize that the Government argued to the District Court that "looking at the facts of this case and the guilty plea, this is a crime of violence."[10] Moreover, counsel for both the Government and the appellant cited *Baskin* to the trial court, and urged its applicability. Thus, since the trial court alluded to the "facts of this case," and because a fact-based inquiry is required by *Baskin,* one

---

**7.** We note that, at least in this circuit, even were we to hold that section 4B1.2 controls section 5K2.13, the trial court would nevertheless be authorized to examine the underlying facts of the offense in determining whether to grant a downward departure pursuant to section 5K2.13. In this jurisdiction, in contrast to the law in a number of other circuits, "[a] sentencing judge retains discretion to examine the facts of a predicate crime to determine whether it was a crime of violence notwithstanding the Commentary to the guidelines' predetermined list of crimes which it considers to be crimes of violence." *Baskin,* 886 F.2d at 389. We emphasize, however, that our decision today does not rely on *Baskin.*

**8.** In fact, some of those courts that have held that section 4B1.2 controls the inquiry under section 5K2.13 have examined the underlying facts of the case to determine whether the crime was a "non-violent offense," even where the crime at issue purportedly met the definition of a "crime of violence" by virtue of having an element that involved the "use, attempted use, or threatened use of physical force." *See, e.g., Borrayo,* 898 F.2d at 94 & n. 5 (concluding that bank robbery in violation of section 2113(a) was a "crime of violence" in part by examining the facts of the case).

**9.** Sentencing Tr. at 11–12 (emphasis added).

**10.** *Id.* at 8.

might conclude that the District Court did evaluate the facts before imposing sentence. Even accepting this possibility, however, this would not be the end of the matter.

In our view, the trial court's decision cannot be affirmed because, even if a fact-based inquiry was conducted, it is unclear to us whether the District Court undertook that inquiry with a view to lenity, as section 5K2.13 implicitly recommends. The District Court may well have been guided by the principles of section 4B1.2, which is, as noted above, far less forgiving to the defendant. There is nothing to indicate that the trial court took these considerations into account in looking at the facts of this case.

Thus, because it appears that the trial court misconstrued the extent and nature of the discretion conferred upon it by section 5K2.13, we must vacate Chatman's sentence and remand the case to the District Court for resentencing. The District Court should thereupon reconsider whether Chatman is eligible for a downward departure under section 5K2.13.

In remanding, we wish to make clear one point on which we differ with the *Poff* dissent. That dissent might be read to suggest that *any* crime that does not actually involve physical violence is a "non-violent offense." *See Poff*, 926 F.2d at 594–95 (Easterbrook, J., dissenting) ("[a] 'non-violent offense' ... is one in which mayhem did not occur.... '[N]on-violent offense' refers to crimes that in the event did not entail violence."). We think that such a rule would run contrary to the purpose of section 5K2.13, which is to allow downward departures where incapacitation is not particularly justified. Some offenses that never resulted in physical violence may, nonetheless, indicate that a defendant is exceedingly dangerous, and should be incapacitated. Thus, for instance, an offense that involved a real and serious threat of violence—such as assault with a deadly weapon—is not, in our view, within the compass of a "non-violent offense." In short, in determining whether a particular crime qualifies as a "non-violent offense,"

the District Court need not limit itself to determining whether the offense "entail[ed] violence."

### III. CONCLUSION

For the foregoing reasons, we vacate the appellant's sentence and remand the case to the District Court for resentencing in light of the foregoing opinion.

*So ordered.*

Circuit Judge D. H. GINSBURG, concurring:

I concur in the opinion of the court, but write separately to note my view that the result in this case would not obtain if *United States v. Baskin*, 886 F.2d 383 (D.C.Cir. 1989), were not the law of this circuit. In *Baskin* the court held that although the determination whether a crime is one of violence within the meaning of § 4B1.2 of the Sentencing Guidelines must be made first with reference to the elements of the crime, the district court must also analyze the facts of the particular case in order to determine whether the offense is "in fact [a] crime[ ] of violence."

I believe that § 4B1.2 and § 5K2.13 ought to be read in tandem. Absent some indication that the terms "crime of violence" and "non-violent offense" are terms of art, common sense dictates that they are contrapositives. In both cases, the key notion is violence. We cannot "tease meaning from the Commission's use of a prepositional phrase rather than an adjective." *United States v. Poff*, 926 F.2d 588, 591 (7th Cir.1991). So long as *Baskin* is the law, therefore, a factual inquiry is mandated under § 5K2.13 as well as § 4B1.2.

As the court forthrightly notes, no other court has defined a "non-violent offense" as anything but the converse of a "crime of violence." *See United States v. Maddalena*, 893 F.2d 815 (6th Cir.1989) ("[T]he commentary to section 4B1.2 of the guidelines includes robbery as an offense covered by the provision.... Thus section 5K2.13 is not applicable to defendant, for he did not commit a non-violent offense"); *United States v. Sanchez*, 933 F.2d 742, 747 (9th Cir.1991) ("Because 'non-violent offense' is not defined in the guidelines, we defer to

the definition of 'crime of violence' ...") (*quoting United States v. Borrayo*, 898 F.2d 91, 94 (9th Cir.1990)); *United States v. Rosen*, 896 F.2d 789 (3rd Cir.1990); *United States v. Poff*, 926 F.2d 588 (7th Cir.1991).

Notwithstanding the implication of the court's opinion in this case, see page 9, no circuit has in fact reached a contrary result. In *United States v. Spedalieri*, 910 F.2d 707 (10th Cir.1990), the court of appeals declined for want of jurisdiction to review the district court's refusal to exercise its discretion to depart downward under § 5K2.13. Therefore, it did not have occasion to pass upon the question whether § 5K2.13 and § 4B1.2 are to be construed in like fashion. In *United States v. Philibert*, 947 F.2d 1467 (11th Cir.1991), the court held that a downward departure was available under § 5K2.13 for a defendant who made a threatening telephone call but did not say whether it was relying upon the elements of the offense charged or upon the facts of the particular case, nor did it discuss at all the relationship between § 5K2.13 and § 4B1.2.

If I am correct in believing, with the other circuits, that § 4B1.2 and § 5K2.13 must be construed in harmony, then the holding in *Baskin* that a factual inquiry is required under § 4B1.2 compels the conclusion that a factual inquiry is warranted under § 5K2.13 as well. The other circuits that have examined the question have persuasively criticized the holding of *Baskin*, however. *See, e.g., United States v. Gonzalez–Lopez*, 911 F.2d 542, 550–51 (11th Cir.1990) ("The D.C. Circuit seems to suggest that a sentencing court may not consider the facts of a prior conviction when determining status as a career offender but that it can review the facts of a prior conviction when determining the appropriateness of departure. We cannot believe that the Commission intended such a result"); *see also United States v. John*, 936 F.2d 764 (3rd Cir.1991) (noting that "it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct" where the prior conviction is for a crime an essential element of which is the use or threatened use of force).

A recent decision of the Supreme Court, *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), casts additional doubt upon the continuing vitality of *Baskin*. In *Taylor*, the Court found that when violence was not an element of the prior crime, the sentencing court is not to look to the underlying conduct. *Id.* at 600, 110 S.Ct. at 2159. The Court did not say what should be done when violence is an element of the prior crime, but logic suggests that the same provision of the Guidelines should be applied consistently with regard to whether the court looks solely to the elements of the crime. Nonetheless, this court has since reaffirmed the holding of *Baskin*. *See United States v. Bradshaw*, 935 F.2d 295, 303 (D.C.Cir. 1991); *see also United States v. Butler*, 924 F.2d 1124, 1132 (D.C.Cir.1991).

In light of the court's post-*Taylor* reaffirmation of *Baskin*, this panel is constrained to conclude that a factual inquiry is required under § 5K2.13 as it is under § 4B1.2. In light of the somewhat different concerns underlying the two sections, however, the factual inquiry appropriate to § 5K2.13 might well be different from the factual inquiry the district court undertook pursuant to § 4B1.2, as the court points out. Therefore, the case must be remanded for the district court to make its inquiry pursuant to § 5K2.13.