**UNITED STATES of America**

v.

**Samuel B. MOORE–BEY, Defendant.**

**No. CRIM. A. 95–00319.**

United States District Court,
District of Columbia.

Oct. 6, 1997.

Reita Pauline Pendry, Federal Public Defender for D.C., Washington, DC, for Samuel Bertrell Moore.

Stephen Pierce Anthony, U.S. Dept. of Justice, Public Integrity Section, Washington, DC, for U.S.

### OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Defendant argues first that the Court failed to exercise its discretion to grant a downward departure for "diminished capacity" under the United States Sentencing Guidelines ("U.S.S.G.") and second, that Defendant's criminal history was overrepresented under the Guidelines. For the reasons stated below, the Court denies Defendant's Motion on both grounds.

I.

On February 1, 1996, Defendant pled guilty to six counts of bank robbery in a nine count indictment. See 18 U.S.C. § 2113(a). Defendant's modus operandi was to approach a bank teller with a note demanding large bills and threatening "this thing is going to explode any minute now." Given Defen-

dant's criminal history category and the offense level in this case, his projected sentence ranged from 151 to 188 months under the Guidelines. On May 2, 1996, pursuant to the agreement of counsel, this Court sentenced Defendant to the minimum of 151 months. Defendant alleges that the Court did not adequately take into consideration at the time of sentencing his reduced mental capacity. Section 5K2.13 of the Guidelines provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

This Court recognizes that under § 5K2.13, it has discretion to depart. Nonetheless, certain elements must be met: 1) that the offense committed is "non-violent"; 2) that the reduced mental capacity is not the result of voluntary drug use; and 3) that defendant's criminal history does not indicate a need to protect the public. The Court finds that Defendant in this case fails to meet any of these elements.

In *United States v. Chatman*, 986 F.2d 1446 (D.C.Cir.1993), our Court of Appeals held that the district court was not precluded from determining a bank robbery to be a "non-violent offense" under § 5K2.13. It opined that "the sentencing court has broad discretion under section 5K2.13 to examine all the facts and circumstances of a case to determine whether a particular offense was in fact 'non-violent.'" *Id.* at 1450. Thus, the Defendant is right to contend that this Court has authority to categorize his bank robbery as "non-violent" even though the same crime seemingly qualifies *per se* as a "crime of violence" under § 4B1.2 of the Guidelines. *Id.* at 1448–53.

Defendant claims that a particularized examination of the facts and circumstances in this case reveals that he never perpetrated his crimes with acts of violence. This kind of reasoning, however, is of the type that the Court of Appeals in *Chatman* cautioned against:

> Some offenses that never resulted in physical violence may, nonetheless, indicate that a defendant is exceedingly dangerous, and should be incapacitated. Thus, for instance, an offense that involved a real and serious threat of violence ... is not, in our view, within the compass of a "non-violent offense." In short, in determining whether a particular crime qualifies as a "non-violent offense," the District Court need not limit itself to determining whether the offense "entail[ed] violence."

*Id.* at 1454. By threatening to blow up the bank "any minute now," Defendant clearly posed a "real and serious threat of violence." His crimes were not "non-violent," because they specifically relied on the threat of violence for their commission.

As Defendant concedes, departure under § 5K2.13 is not permissible if the diminished mental capacity alleged is the result of voluntary drug use. This is the plain language of the Guidelines. Although the neuropsychological evaluation submitted by the Defendant indicates some history of a bipolar disorder, *see* page 5, Exhibit "A" of May 1, 1996 Memorandum in Aid of Sentencing, Defendant's own physician states that "[v]irtually all of his criminal activity seems to have occurred in connection with drug abuse." *See Id.* at 1. Defendant's physician indicates that treatment of his disorder would only help to keep Defendant off drugs, which in turn would diminish his need to commit criminal acts. *Id.* at 6. If there is any reduced mental capacity at issue in this case, it appears from the record that it stems primarily from Defendant's drug abuse. His alleged bipolar disorder is at best secondary: Because he suffers from depression, according to his doctor, Defendant has resorted to taking drugs and committing crimes to feed his habit. The proximate cause of Defendant's reduced mental capacity, if any, is the result of drug use. Section 5K2.13 cannot apply in Defendant's case.

Lastly, this Court finds that Defendant's criminal history indicates a need for incarceration to protect the public. In *United States v. Atkins*, 116 F.3d 1566 (D.C.Cir.1997), our

Court of Appeals outlined four factors that a trial court must consider in determining a defendant's danger to the public: "psychiatric or other medical treatment the defendant is receiving and its likelihood of success, the defendant's likely circumstances upon release, the defendant's overall criminal record and the 'nature and circumstances' of the current offense." *Id.* at 1570. Any and all of these factors indicate the need to incarcerate Defendant for the protection of the public. Defendant's record reflects a history of drug abuse and criminality to support his habit all the way back to the 1960s. He has been in and out of prisons for nearly all of his adult life; once released, his record demonstrates an utter lack of support outside the confines of prison to curb his addiction. Moreover, his predilection for bank robbery poses a safety risk not only to the tellers and customers, but also guards and bystanders. Considering the "nature and circumstances of the current offense"—a spree of six robberies in less than six months—this Court's concern for the public is well-founded.[1]

## II.

■ Furthermore, Defendant argues that his criminal history was overrepresented at sentencing, and that he should not have been categorized as a career offender under § 4B1.1 of the Guidelines. Section 4B1.1 provides that a defendant who is at least 18 years old at the time of the instant violent felony offense, with at least two prior felony violent offense convictions, be classified as a career criminal. Defendant argues that the classification is the result of two prior convictions that are over twenty years old—a 1974 armed robbery and a 1975 bank robbery. Given the remoteness in time, Defendant contends that this Court should have granted a downward departure under § 4A1.3 which allows for departure when a defendant's criminal history category overrepresents the seriousness of past criminal conduct and the likelihood of recidivism. *See* § 4A1.3 U.S.S.G.; *see also United States v. Beckham,*

968 F.2d 47 (D.C.Cir.1992). The gap in time does not mitigate the seriousness of Defendant's prior criminal conduct. He was incarcerated or on probation for most of the twenty year period between the past acts and present conviction. This Court finds that Defendant's criminal history has not been overrepresented; it hereby denies Defendant's motion to reconsider his sentence on either or both grounds of reduced mental capacity and overrepresentation of criminal history.

---

1. In this case, during one of the robberies, an undercover police officer was in the bank. The officer pursued Defendant on foot and, via radio, signaled for other officers to lookout. The Defendant escaped in a getaway car driven by a female friend. The police pursued them until they lost control of the vehicle and crashed into a tree. This high speed chase posed an enormous risk to the public.