BECKER, Chief Circuit Judge,
Dissenting.
I join in Parts I, II, and IIIA, B, & C of the majority opinion, which overrule United States v. Rosen, 896 F.2d 789 (3d Cir.1990), and hold that Rosen’s determination that “non-violent offense” as used in U.S.S.G. § 5K2.13 should be controlled by the definition of “crime of violence” used elsewhere in the Sentencing Guidelines was incorrect. Judge Scirica’s analysis in these segments of his opinion is not only sound but itself clearly demonstrates why the only appropriate and logical course is to permit the district courts to consider all the facts and circumstances surrounding the commission of a crime when deciding whether that crime qualifies as a non-violent offense under § 5K2.13.
In Part IIID, however, the court holds that (and attempts to explain why) we should preclude sentencing judges from granting § 5K2.13 departures in “traditional” bank robbery cases.[1] After invoking the Sentencing Reform Act, 18 U.S.C. § 3553, and exploring the terms of the bank robbery statute, 18 U.S.C. § 2113(a), the court defines “non-violent offense” as those offenses “which do not involve a reasonable perception that force against persons may be used in committing the offense.” Op. at 549. The court also states that:
It would seem, therefore, that with bank robbery convictions under the first paragraph of 18 U.S.C. § 2113(a), a defendant could not qualify for a departure under USSG § 5K2.13 as presently written____ [i]f the'elements of the crime require a finding of violent conduct, then a valid conviction could hardly permit a sentence based on a finding of non-violent conduct.
Id. at 548, 549.
I do not believe that there any persuasive reasons to support the categorical exclusion from § 5K2.13 of offense conduct that the analysis in the first segments of Part III would have otherwise left to fact specific consideration by the sentencing judge. That is because, as those circuits that have already rejected the Rosen approach have concluded, the policies behind the departure provisions are distinct from (and often in tension with) the career offender and substantive offense guidelines, and that it accordingly does not make sense to assess whether an offense is “nonviolent” based on the statutory elements of the crime. Unlike the majority, I would follow that logic to its conclusion. That logic, I note, is buttressed by Judge McKee’s and Judge Garth’s concurring opinions.
I
Section 5K2.13 of the Guidelines is a policy statement authorizing sentencing judges to downwardly depart in circumstances when the offender is found to have been “suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants.” Section 5K2.13 is a guided departure, one that is thus “encouraged.” See Koon v. United States, 518 U.S. 81, 94-96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996). Although a § 5K2.13 departure depends upon a judgment as to the extent to which reduced mental capacity contributed to the commission of the offense, a departure is optional, and elements of discretion are plainly present.
The critical limitation on the ability of the sentencing judge to grant a § 5K2.13 departure is that the defendant must have committed a “non-violent offense.” This term is not, as the majority notes, defined anywhere in the Guidelines. In Rosen, we adopted a definition based on “crime of violence,” a term of art used in § 4B1.1, the career offender provision, and defined in § 4B1.2. Unlike § 5K2.13, which permits sentencing judges to exercise leniency in appropriate circumstances, § 4B1.1 mandates that a certain class of recidivist offenders receive the harshest sentence possible under the circumstances by ratcheting up both the criminal history and base offense levels.
*559 A
The effect of Rosen was that, by applying the “crime of violence” standard to the “nonviolent offense” analysis, the sentencing judge would be bound by the statutory elements of the offense in determining whether the crime was “nonviolent.” This is because a “crime of violence” is defined as an offense that “has an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 4B1.2; see also United States v. Poff, 926 F.2d 588, 594 (7th Cir.1991) (en banc) (Easterbrook, J., dissenting) (“[Wjhether a crime is one ‘of violence’ depends on its elements and not on the defendant’s conduct.”). What actually happened is not relevant; the court need only look to the elements of the offense of conviction. Accordingly, since the crime of bank robbery is defined to include force or intimidation, see 18 U.S.C. § 2113(a), it could never be found to be a non-violent offense under the Rosen construction.[2]
The majority rejects Rosen in favor of the contrary view expressed in United States v. Weddle, 30 F.3d 532, 540 (4th Cir.1994), United States v. Chatman, 986 F.2d 1446 (D.C.Cir.1993), and in Judge Easterbrook’s noted dissent in Poff These cases demonstrate why we must necessarily examine the facts of the offense to determine whether “significantly reduced mental capacity” could be a ground for lenience at sentencing. As Judge Edwards summarized in Chatman:
[T]he point of section 5K2.13 is to treat with lenity those individuals whose “reduced mental capacity” contributed to the commission of a crime. Such lenity is appropriate because, as Judge Easter-brook points out, two of the primary rationales for punishing an individual by incarceration—desert and deterrence—lose some of their relevance when applied to those with reduced mental capacity. As to desert, “[pjersons who find it difficult to control their conduct do not—considerations of dangerousness to one side—deserve as much punishment as those who act maliciously or for gain.” Poff, 926 F.2d at 595 (Easterbrook, J. dissenting). Further, “[b’Jecause legal sanctions are less effective with persons suffering from mental abnormalities, a system of punishment based on deterrence also curtails its sanction.” Id. ...
[W]hen an individual with “significantly reduced mental capacity” does not pose a danger to the public, and thus does not need to be incapacitated, that individual is eligible for a downward departure.
Considered in this context, the term “non-violent offense” in section 5K2.13 refers to those offenses that, in the act, reveal that a defendant is not dangerous, and therefore need not be incapacitated for the period of time the Guidelines would otherwise recommend____ A determina-
tion regarding the dangerousness of a defendant, as manifested in the particular details of a single crime that he or she has committed, is best reached through a fact-specific investigation.
Chatman, 986 F.2d at 1452 (internal citations omitted). The majority also recognizes this policy foundation,finding that U.S.S.G. § 5K2.13 “encourages more lenient treatment for persons who are not actually dangerous but whose reduced mental capacity contributed to the commission of a crime.” See Op. at 546 (emphasis added).
The policy rationale discussed in Chatman, in conjunction with the discretionary nature of § 5K2.13 discussed supra, counsels that sentencing judges must be given the ability to examine the facts of the offense to determine whether a diminished capacity departure is appropriate. To that end, Weddle, Chatman, and the Poff dissent all reject the Rosen approach in favor of a factspecifie inquiry. See Chatman, 986 F.2d at 1452 (“We therefore believe that a District Court, when deciding whether a particular crime qualifies as a ‘non-violent offense,’ should consider all the facts and circumstances surrounding the commission of the crime.”); Weddle, 30 F.3d at 540 (agreeing with the Chatman fact-specific approach); Poff, 926 F.2d at 595 (Easterbrook, J., dissenting) *560 (concluding that “non-violent offense” refers to “crimes that in the event did not entail violence.”). Thus, the essential distinction between Chatman and Rosen is whether the statutory definition of the crime or the facts of the offense will be outcome determinative.[3]
Yet, while the majority ostensibly rejects Rosen and claims to find the arguments in Chatman, Weddle, and the Poff dissent “convincing,” see Op. at 546, it does not fully adopt the fact-based inquiry necessary to its own position. Instead, the majority posits that the district court should “look at” the facts of the offense, but should do so “within the context of the Sentencing Reform Act and the underlying statute defining criminal culpability.” See id. at 547. It then directs courts to “assess the seriousness of the offense” to determine whether a departure is warranted by looking “to the elements of the crime and the surrounding conduct.” Id. at 548. And while the majority holds that “nonviolent offense” should be defined based on the “reasonable perception that force against persons may be used”—which sounds more like a fact specific inquiry—it concludes that:
If the elements of the crime require a finding of violent conduct, then a valid conviction could hardly permit a sentence based on a finding of non-violent conduct. So long as the bank robbery victim has been threatened with harm, and is seen to have been threatened under an objective standard (reasonable person), the defendant cannot be found to have acted in a nonviolent manner.
Id. at 549.
Since the applicable provision of 18 U.S.C. § 2113(a) has as a statutory element actual or threatened force (the latter measured under an objective standard), by definition an offender convicted of traditional bank robbery could never be found to have committed a “non-violent” offense. Thus, under the majority’s construction of Chatman, Muhammad Askari could not qualify for a departure under § 5K2.13 regardless of the factual circumstances underlying his offense. To that end, the majority’s proposed “reasonable perception” standard does not save its opinion from being analytically identical to Rosen. As Judge McKee explains in his concurring opinion, under the majority’s reasoning “once a sentencing court concludes that the elements of a crime include violence or intimidation, a defendant is no longer eligible for the fact-specific, case by case inquiry that would otherwise govern a departure under § 5K2.13.” Concurr. Op. (McKee) at 554. In other words, in such a circumstance the majority directs us not to consider whether the facts of the ease constitute a real expression or threat of violence, but whether the crime itself is “of violence.” This restricts the meaning of “non-violent offense” by “the very definition [the majority] holds does not apply.” See Concurr. Op. (McKee) at 554.
I fail to see how this approach, which appears to credit Judge Easterbrook’s reasoning, is substantially different from a straightforward application of Rosen or the majority view in Poff. As Judge Garth aptly opines in his concurring opinion, the majority has “gone out of its way to reject Rosen in theory but has embraced it in fact.” See Concurr. Op. (Garth) at 557. I observe that the majority has properly rejected Rosen in theory, but has gone out of its way to embrace it in fact.

B

It is important that we pause and recognize the significance of what the majority *561 holds today. As the majority correctly notes, one element of the applicable bank robbery* statute is that the offender takes property either “by force and violence” or “by intimidation.” See Op. at 541.
As discussed, it is this element of the offense that seals Muhammad Askari’s fate. However, as the majority also notes, to prove “intimidation,” the government need only show that an “ordinary person in the teller’s position reasonably could infer a threat of bodily harm from the defendant’s acts.” Id. (citing United States v. Woodrup, 86 F.3d 359, 363 (4th Cir.), cert. denied, — U.S. -, 117 S.Ct. 332, 136 L.Ed.2d 245 (1996).) This means that a defendant whose diminished mental capacity at the time of the offense is beyond cavil could be precluded from a § 5K2.13 departure despite a record that clearly demonstrates that (a) there was no actual violence; (b) there was no real chance of violence being carried out; and (c) no one in the bank at the time of the robbery actually felt threatened by the defendant. This result cannot be consistent with the desert and deterrence rationales discussed supra and impliedly embraced by the majority.[4]
In contrast, to be consistent with its reasoning in Part IIIC, the majority should have modeled its result in Part HID on Chatman. The facts of Chatman are just like those presently before us. The unarmed defendant walked into a bank, passed the teller a note demanding money, and threatened violence otherwise. The defendant left the bank without incident and was captured by the police soon thereafter. Since it was unclear from the record whether the district court had assessed the specific facts of the case and exercised its discretion to depart, or whether it had categorically rejected the § 5K2.13 departure based on the statutory definition of bank robbery, the D.C. Circuit remanded for a resentencing. See Chatman, 986 F.2d at 1454. The same result should obtain here. As in Chatman, the district court rejected the § 5K2.13 departure not on the facts, but because it believed (correctly, as things have turned out) that it was precluded from departing based on the elements of the crime. But as Judge McKee states, once we have rejected Rosen, “we need no longer tether our § 5K2.13 analysis to the definition in § 4B1.2 that we have just rejected.” Concurr. Op. (McKee) at 554.[5]
*562 II
Judge Stapleton, writing separately, also agrees that the definition of “non-violent offense” used in § 5K2.13 should not be controlled by the definition of “crime of violence” used in the career offender provision, § 4B1.1. However, like the majority, he concludes that a downward departure is not warranted in traditional bank robbery cases. Although Judge Stapleton’s rationale differs somewhat from the majority’s, I believe that it still comes up short.
Judge Stapleton’s reasoning can be summarized as follows. First, he rejects Judge Easterbrook’s view that the findings of the jury at the guilt phase with respect to the defendant’s use of violence or threats are essentially irrelevant at the departure phase. See Coneurr. Op. (Stapleton) at 550. Judge Stapleton believes, like the majority, that if a conviction for bank robbery necessarily entails a jury finding that the defendant’s conduct was, at least, reasonably perceived as involving a threat of violence, this finding should preclude characterization of the offense as “non-violent” for § 5K2.13 purposes. See id. at 547, 551. The difference between this view and Rosen, according to Judge Stapleton, is that while Rosen mandates that the elements of the offense control the outcome in all cases, under the Stapleton view the elements do not always control, but rather the “findings necessarily implicit in a conviction may preclude” characterization of the offense as “non-violent.” See id. at 551.
Accordingly, Judge Stapleton also rejects the Chatman view that whenever a § 5K2.13 motion is made in a bank robbery case involving unrealized violence, the sentencing court should have the opportunity to make an independent determination whether or not the threat “was a serious one that would have been acted on had events unfolded differently.” See id. at 552.[6] His rejection of the need for such factual findings is premised on a belief that the Sentencing Commission intended the Guidelines to follow the “traditional view” that crimes involving violence and crimes involving only threats of violence are regarded as being of equal seriousness. Based on an examination of the text of both the robbery guideline and the robbery statute, he finds no distinction between realized violence and unrealized threats. Accordingly, Judge Stapleton concludes that the Commission did not intend to authorize downward departures in traditional bank robbery cases involving only unrealized threats. See id. at 551. Hence, Judge Stapleton is of the view that an offense involving an unrealized threat could never be “non-violent.”
I disagree with this analysis for two reasons. First, I am not persuaded that Judge Stapleton’s reliance on “the findings necessarily implicit in a conviction” is analytically distinguishable from the Rosen approach. The findings that are necessary to a conviction for a given offense will always be equivalent to the statutory elements of that offense—that is, to say that implicit in a bank robbery conviction is a jury finding that there was a reasonable inference of a threat of bodily harm is no different from saying that the bank robbery statute requires the government to prove that the victims reasonably felt threatened. Thus, it makes no sense to me to hold that the sentencing court should “look to the underlying facts,” see Coneurr. Op. (Stapleton) at 551, while simultaneously holding that a departure could be precluded by “implicit” facts—i.e. the elements of—the conviction. I reiterate the point made by both Judges McKee and Garth that there is no difference between the Rosen “crime of violence” approach and an approach by which the decision to depart is per se precluded by the statutory elements of the offense. See Coneurr. Op. (McKee) at 553; Coneurr. Op. (Garth) at 556-558. Judge Stapleton’s first conclusion cannot be consistent with a rejection of Rosen.
*563 Second, Judge Stapleton’s conclusion that the Commission has adopted the “traditional view” that threats and actual violence should be treated the same in the departure context is equally problematic. As the majority’s analysis of Poff, Chatman, and Weddle amply indicates, a major reason why we have rejected the Rosen analysis is that the policy goals driving the departure provisions are significantly different from the policy goals motivating the other portions of the Guidelines. See Op. at 545-46, 546-47; see also Chatman, 986 F.2d at 1452. Thus, while it may make good policy sense to treat bank robbery offenders who use violence the same as those who only threaten violence for purposes of computing the applicable base offense level, different policy goals are implicated when it comes to the departure decision, and in that context it does not necessarily make sense to treat empty threats and actual violence as per se the same.
Furthermore, as Judge McKee explains in his concurring opinion, the “Sentencing Reform Act and the resulting Sentencing Guidelines have altered the relationship between the offense of conviction, and the criminal sanction that follows.” Concurr. Op. (McKee) at 554. To use Guidelines vocabulary, the “heartland” of the offense sets the presumptive sanction range by way of the base offense level. In the bank robbery context, that heartland is defined by the mere prospect of violence. See Poff, 926 F.2d at 594 (Easterbrook, J., dissenting). Thus, the presumptive sanction is the same whether the offense involved actual violence or the threat of violence. Section 5K2.13, however, is concerned with whether the offense conduct is indicative of a need for the standard incapacitation entailed by a given offense or whether the conduct is more indicative of a mental illness, and thus society has a lesser need to incapacitate. See Chatman, 986 F.2d at 1452 (discussing incapacitation rationale). Thus, when “things turn out better than they might” and violence does not actually occur, a departure becomes permissible. Poff, 926 F.2d at 594 (Easterbrook, J., dissenting). In that light, whether the offender was actually violent or posed a real threat of violence, or whether he presented a threat that was unlikely to have been realized, is a central and necessary factual distinction in the departure context. Thus, it does not necessarily follow that because the robbery offense guideline does not distinguish between realized and unrealized violence that the departure provisions should similarly not make such a distinction.
Moreover, it is not even obvious that the robbery offense guideline does not fully distinguish between “situations in which violence actually occurs and situations in which it is threatened but’ the threat is not realized.” Concurr. Op. (Stapleton) at 552. Judge Stapleton is correct that § 2B3.1, the robbery offense guideline, does not provide for a specific base level enhancement for violence per se. However, § 2B3.1(b)(3) mandates a graduated offense level increase if the victim of the robbery sustained a bodily injury.[7] I recognize that there can be crimes where violent conduct occurs but does not result in bodily injury, and thus this enhancement does not squarely refute Judge Staple-ton’s argument. See United States v. Harris, 44 F.3d 1206, 1218 (3d Cir.1995) (finding that there will be crimes where the offender will use mace but will not cause bodily injury to victims). At the same time, it seems plausible to read into this provision an intent of the Commission to treat serious threats the same as violence only when that violence does not result in injury. Since threats by themselves cannot cause bodily injuries, see United States v. Sawyer, 115 F.3d 857, 859 (11th Cir.1997) (holding that psychological injury by itself cannot support an enhancement under § 2B3.1(b)(3)), the Commission clearly intended to treat legitimate threats and substantial violence differently. Perhaps, then, the Commission did not adopt *564 Judge Stapleton’s “traditional view” wholesale after all.[8]
In sum, I would follow the principles advanced in Chatman, Weddle and the Poff dissent. Even if there is a reasonable perception of a threat by the bank teller that justifies a conviction and a base offense level that is the same as if the offender had used actual violence, the policy goals underlying Chapter Five of the Guidelines are different from the policies underlying the substantive offense provisions, and thus the jury’s factual determinations should not necessarily preclude a departure.
Ill
The improvidence of the majority view is demonstrated by a recent highly publicized incident in the Philadelphia area. In December of 1997, in a drama resembling the one currently before us, the mayor of Darby Borough, Pennsylvania, a beloved and respected long-time member of the community, walked into a local bank in broad daylight and told a teller “This is a robbery. I have a bomb on me.” See Lisa Sandberg, Darby Mayor Held in Bank Heist, Philadelphia Inquirer, Dec. 28, 1997, at B5. Apparently the mayor walked out with $1,500, but surrendered to authorities about one half-hour later. See id. According to the police investigating the crime, the mayor did not actually possess a bomb. See id. Friends and colleagues believe that his actions were the product of chronic depression related to personal and financial troubles. See Raphael Lewis & Lisa Sandberg, Depression Tied to Bank Robbery, Philadelphia Inquirer, Dee. 30,1997, at Bl, B6.
If this were a federal case (it is not and will not be),[9] a district court would have no grounds under the majority’s opinion to depart downwards on grounds of diminished capacity. More specifically, it would have no grounds to depart even if it found beyond cavil that the defendant’s actions were prompted by a deep psychological disturbance and that there was no real threat of violence. In my view that makes no sense.
For all the foregoing reasons, I respectfully dissent. Judge Nygaard and Judge Roth join in this dissent.

. I adopt Judge Stapleton's reference to "traditional" bank robbery as that conduct proscribed by the first paragraph of 18 U.S.C. § 2113(a). See Concurr. Op. (Stapleton) at 548.

. The majority concedes as much. See Op. at 541 ("If 'non-violent' offense in USSG § 5K2.13 is defined by reference to the term ‘crime of violence' in USSG § 4B1.2 and its commentary, then bank robbery would never qualify as a 'nonviolent' offense.”).

. I note that the circuit split on the question presently before us has caught the attention of the U.S. Sentencing Commission, which has recently proposed four alternative amendments to § 5K2.13. See 62 Crim. L. Rep.2051, 2078-79 (Jan. 21, 1998). Option one corresponds to the Rosen—Poff majority view. Option two corresponds to the Chatman fact-intensive view. Option three, a variation on the Chatman view, "defines the scope of the departure to exclude cases that involve actual violence or a serious threat of violence." Id. at 2078. Finally, option four broadens the scope of the departure by eliminating the "non-violent offense" limitation altogether. See id. It is interesting that the Commission, obviously influenced by the force of Judge Easterbrook's Poff dissent, which it explicitly references, appears to be in doubt over the best course to take. Unlike many of the other proposals for amendment it has made in the past, the Commission proposes four distinct options rather than taking a definite stance on this issue.

. The majority attempts in Part HID of its opinion to suggest a set of circumstances in which an offender convicted of bank robbery still could qualify for a § 5K2.13 departure. In the majority's hypothetical, a public official could commit bank robbery by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(b)(2) without force or the threat of force. See Op. at 547-549. As Judge Garth suggests in his concurring opinion, this is a somewhat farfetched set of facts, and is not particularly helpful in deciding whether the rule the majority fashions today is distinguishable from Rosen. I would also add that the majority’s example, on its own facts, although styled as a "bank robbery” would appear to involve instead a prosecution under the Hobbs Act—which does not have as a necessary element the use of force or the threat of force. See United States v. Addonizio, 451 F.2d 49, 72 (3d Cir.1972) (indicating that Hobbs Act violation can be based on fear of economic loss). In that case, the majority’s hypothetical defendant could be eligible for a § 5K2.13 departure even under Rosen. If, on the other hand, the majority’s example would entail a prosecution under 18 U.S.C. § 2113(a), by the terms of the majority's own opinion a diminished capacity departure would be precluded. See Op. at 548 (“It would seem, therefore, that with bank robbery convictions under the first paragraph of 18 U.S.C. § 2113(a) [including extortionate acts], a defendant could not qualify for a departure under USSG § 5K2.13 as presently written.”).
In order to distinguish itself from Rosen, the majority would need to generate a hypothetical under the first paragraph of 18 U.S.C. § 2113(a) that would not foreclose a diminished capacity departure. This the majority has not done. See also Concurr. Op. (Stapleton) at n. 1 ("While it has been suggested that a public official may be able to commit bank robbery by "extorting” bank funds without a threat of violence, I would not regard this as traditional bank robbery and I would take no position on the application of § 5K2.13 in such a case.”).

. Both the majority in Part IIIE and Judge McKee's concurrence conclude that we should also affirm the district court’s denial of a departure pursuant to § 5K2.13 because Askari’s criminal histoiy suggests a need to protect the public. While it is true that to be eligible for a diminished capacity departure, § 5K2.13 requires that "a defendant’s criminal histoiy does not indicate a need for incarceration to protect the public," and while the district court found that Askari has a long histoiy of crime, the district court did not expressly make a finding about the need for incarceration in this case. I believe that that determination should be made by the district court in the first instance.

. The Chatman court disagreed with the Poff dissent to the extent that Judge Easterbrook’s opinion could be read to suggest that any crime that does not actually involve physical violence is a "non-violent offense.” See Chatman, 986 F.2d at 1454. The court found instead that some offenses that did not actually result in violence may suggest that the defendant is "exceedingly dangerous” and needs to be incapacitated. See id. The court described such offenses as those which "involved a real and serious threat of violence,” and included as an example assault with a deadly weapon. See id. This determination, however, was left to the district court.

. Section 2B3.1(b)(3) provides, in part:
If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury:
Degree of Bodily Injury Increase in Level
(A) Bodily Injury add 2
(B) Serious Bodily Injury add 4
(C) Permanent or Life-Threat- add 6 ening Bodily Injury

. Even accepting that the Commission did not intend to distinguish between violent offenses and offenses involving a real threat to violence in the departure context, that does not change the fact that the sentencing court needs to examine the offense conduct to determine if the threat was real enough to justify being treated like actual violence in the departure context.

. I am informed by the United States Attorney that the mayor is being prosecuted in state court, and that he will not be prosecuted in federal court.