STAPLETON, Circuit Judge,
concurring:
Although it is a close question, I, too, am persuaded that the content of the phrase “non-violent offense,” as used in U.S.S.G. § 5K2.13, should not be determined by reference to the definition of the phrase “crime of violence” in U.S.S.G. § 4B1.2.1 also conclude that a downward departure is not authorized by § 5K2.13 in this case. However, I reach that conclusion by a route somewhat different from that followed by the court.
Having concluded that the scope of the phrase “nonviolent offense” in U.S.S.G. § 5K2.13 is not controlled by the scope of the phrase “crime of violence” in U.S.S.G. § 4B1.2, one must determine whether Askari’s bank robbery offense constitutes a “nonviolent offense” for the purposes of U.S.S.G. § 5K2.13.1 conclude that it does not because a federal bank robbery conviction necessarily involves a finding that the offense involved actual force or a threat of force and such a finding, in my view, precludes characterization of the offense as a non-violent one for purposes of § 5K2.13.[1]
The Poff dissent took note not only of § 5K2.13’s requirement that the offense of conviction be “non-violent,” but also of its requirement that the defendant’s criminal history not indicate a need to protect the public. Read together, this dual requirement suggested to the dissenting judges that § 5K2.13 was intended to authorize leniency for those individuals who suffer from diminished mental capacity that contributed to *551 their crimes so long as neither the history of the defendant nor the character of the crime indicated a need for incapacitation. Against this background, the Poff dissent ultimately concluded that a “non-violent offense” is “one in which mayhem did not occur”—one that “in the event did not entail violence.” 926 F.2d at 594, 595. This conclusion suggests that leniency is available where the offense of conviction involved any sort of unrealized threat of violence so long as the defendant’s criminal history does not indicate the need for incapacitation.
The Chatman court similarly read § 5K2.13 as intended to authorize leniency for those whose diminished mental capacity contributed to their crimes so long as neither the crime nor the criminal history indicates a need for incapacitation. It rejected, however, the position of the Poff dissent that unrealized threats of violence cannot render an offense a violent one. In the view of the Chatman court, “[s]ome offenses that never resulted in physical violence may, nonetheless, indicate that a defendant is exceedingly dangerous, and should be incapacitated.” 986 F.2d at 1454. Thus, if the sentencing court determines that “an offense involved a real and serious threat of violence—such as an assault with a deadly weapon,” it should conclude that it is not a “non-violent offense” for purposes of § 5K2.13. Id. In the case before the Chatman court, the defendant had robbed a bank by handing a note to a teller demanding money that stated, “People will get hurt if I don’t walk out of this bank.” Id. at 1447. The case was remanded to the district court presumably for a determination of the defendant’s state of mind.
Chatman and the Poff dissent both take the view that the sentencing court should look to the underlying facts to determine whether the offense was non-violent. I agree, although I believe it may be helpful for a sentencing court to take note of the essential elements of the crime of conviction, not because those elements control the U.S.S.G. § 5K2.13 issue in all cases, but rather because the findings necessarily implicit in a conviction may preclude it from being a “non-violent offense” within the meaning of U.S.S.G. § 5K2.13.[2] Moreover, I take a somewhat different view of the scope of the phrase “non-violent offense.”
Askari was charged with bank robbery under the first paragraph of 18 U.S.C. § 2113(a). That offense consists of taking, or attempting to take, anything of value, by force and violence, by intimidation, or by extortion. As the court’s opinion demonstrates, the requirement that the property be taken either “by force and violence” or “by intimidation” requires proof of force or threat of force as an element of the offense, and in determining whether intimidation is present, the question is whether an ordinary person in the victim’s position reasonably could infer a threat of bodily harm from the defendant’s acts. As the court also notes, the term “extortion” as used in 18 U.S.C. § 2113(a) means obtaining property from another person, without the other person’s consent, induced by the wrongful use of actual or threatened force, violence, or fear. Thus, in every ease in which the defendant is convicted of bank robbery under the first paragraph of § 21Í3(a), there will be a beyond a reasonable doubt finding that the defendant *552 was violent or engaged in conduct reasonably-perceived as involving a threat of violence.
Under the view taken by the Poff dissent, a finding that the defendant’s conduct was reasonably perceived as involving a threat of violence is not relevant to whether the offense is a “non-violent” one for purposes of § 5K2.13. Like the Chatman court, I reject that view. Section 5K2.13 clearly evidences an intent that there be no downward departure on grounds of diminished mental capacity where incapacitation appears necessary to protect the public, and, in many instances, a threat of violence will be strong evidence of such a need.
While it presents a closer issue, I also reject the Chatman court’s view that whenever a § 5K2.13 motion is filed in a bank robbery case not involving actualized violence, the Sentencing Commission intended the sentencing court to determine whether the threat was a serious one that would have been acted on had events unfolded differently. Given that the issue turns on the Commission’s intent, I look for guidance to the text of § 2B3.1, the “Robbery” Guideline, and the text of the criminal statute that guideline was intended to implement. Like most robbery statutes, the first paragraph of § 2113(a) does not distinguish between situations in which violence actually occurs and situations in which it is threatened but the threat is not realized.[3] Both are regarded as offenses of the same degree of seriousness. Similarly, § 2B3.1 does not distinguish between these two situations. It does not, for example, establish a base offense level for § 2113(a) offenses and then provide for a specific offense characteristic increase for those situations in which violence actually occurs.[4]
It is my understanding that robberies involving violence and all robberies involving only threats of violence have traditionally been regarded as of equal seriousness because threats of violence necessarily hold an unacceptably high risk of realized violence whether emanating from the robber or from others attempting to respond to the threat. Because an unacceptably high risk of actualized violence and attendant injury exists without regard to whether the defendant expected to commit violence, our society has traditionally considered that factor to be irrelevant to the defendant’s culpability in a robbery context.
I agree with the view that the limitations on the downward departure authority conferred by § 5K2.13 are intended to preclude lenity only where no need for incapacitation is indicated. I do not agree, however, that where a person threatens violence in the course of robbing a bank as a result of diminished mental capacity, no need for incapacitation is indicated in the event the sentencing judge believes the threat was not a “serious” one (i.e., probably would not have been carried out had events unfolded differently). As I have noted, the bank robbery statute deals with situations in which there is a high risk of actualized violence and attendant injury without regard to the state of the defendant’s mind. Moreover, § 5K2.13 deals with situations in which diminished mental capacity has contributed to the commission of a crime. Thus, applying § 5K2.13 in a bank *553 robbery context necessarily involves a crime with a high risk of actualized violence and a defendant with a diminished capacity to refrain from such high risk activity. That combination suggests to me a need for incapacitation and makes me reluctant to attribute to the Commission an intent to authorize § 5K2.13 downward departures in bank robbery cases. Because I find nothing in the Guidelines that compels such an attribution, I reject this portion of the Chatman court’s decision.
I would hold that the scope of the phrase “non-violent offense” in U.S.S.G. § 5K2.13 is not controlled by the scope of the phrase “crime of violence” in U.S.S.G. § 4B1.2. I would nevertheless further hold that a § 5K2.13 downward departure is not authorized where the offense of conviction is bank robbery.
Judge Sloviter joins this concurring opinion.
McKEE, Circuit Judge,
concurring
with whom LEWIS, Circuit Judge, joins.
I agree with the majority’s conclusion that the Sentencing Commission did not intend to import the “crime of violence” definition from the career offender provision of U.S.S.G. § 4B1.2 into U.S.S.G. § 5K2.13. I think the majority is correct in rejecting our prior holding in United States v. Rosen and the majority view in United States v. Poff in favor of the view espoused by Judge E aster-brook in his dissent in Poff However, I write separately because the majority concludes that Askari’s crime was not a “non-violent offense” based upon the elements of the crime. That is inconsistent with the approach taken by the dissent in Poff and those jurisdictions that have followed Judge Easterbrook’s reasoning. Rather than deny Askari a § 5K2.13 departure because of the elements of his crime, we should require an individualized inquiry into the specifics of his conduct to determine if his actual conduct amounts to a “non-violent offense” as that term is used in § 5K2.13, notwithstanding the elements of his crime. However, I nevertheless join in the judgment of my colleagues, because Askari’s criminal history indicates that a departure under U.S.S.G. § 5K2.13 is not appropriate because of a need to protect the public.
I.
The majority properly rejects our prior holding in United States v. Rosen, 896 F.2d 789 (3d Cir.1990). The majority’s rejection of the reasoning of Rosen is grounded in Judge Easterbrook’s dissent in United States v. Poff, 926 F.2d 588 (7th Cir.1991), as well as the holding in United States v. Chatman, 986 F.2d 1446 (D.C.Cir.1993), and United States v. Weddle, 30 F.3d 532, 540 (4th Cir.1994). Maj. Op. at 539. However, the majority parts company with those cases insofar as those cases direct the sentencing court to engage in a fact-specific inquiry concerning the defendant’s actual conduct, and the circumstances surrounding the offense, in order to determine if a particular offense is “nonviolent” under § 5K2.13. Instead, the majority “take[s] a somewhat different view of the applicable standard.” Maj. Op. at 547. It limits its inquiry here to the elements of the crime of conviction and allows those elements to govern its determination of whether Askari committed a “non-violent offense” under § 5K2.13.
The majority reasons, “[i]f the elements of the crime require a finding of violent conduct, then a valid conviction can hardly permit a sentence based on a finding of nonviolent conduct.” Maj. Op. at 549. After considering the elements of Askari’s robbery charge, the majority concludes that robbery under 18 U.S.C. § 2113(a)[1] is a crime of violence barring any consideration as a “non-violent crime” under § 5K2.13. Under this approach, once a sentencing court concludes that the elements of a crime include violence or intimidation, a defendant is no longer eligible for the fact-specific, case by *554 case inquiry that would otherwise govern a departure for a “significantly reduced mental capacity” under § 5K2.13. Although the majority’s approach does have a certain logic and symmetry that is quite appealing, I am not persuaded that the analysis under § 5K2.13 ought to be as limited as the majority concludes.
The Sentencing Reform Act and the resulting Sentencing Guidelines have altered the relationship between the offense of conviction, and the criminal sanction that follows to the extent that the symmetry of the majority’s analysis is no longer required or appropriate.[2] As the majority correctly points out, the purposes of § 4B1.2 and § 5K2.13 are not the same. The factors that are relevant under § 4B1.2 are not necessarily relevant,' or even appropriate, under § 5K2.13. My colleagues in the majority provide a very reasoned and convincing statement of why the definition of “crime of violence” cannot control whether a conviction is for a “nonviolent offense” for purposes of a downward departure based upon “reduced mental capacity.” However, the majority then restricts the meaning of “non-violent” offense under '§ 5K2.13 by the very definition that it holds does not apply under that Guideline. Section 4B1.2 defines “crime of violence” to include any offense that “has as an element the use, attempted use, or threatened use of physical force.” However, today we adopt the reasoning of Judge Easterbrook’s dissent in Poff, and the eases that have relied upon it. Under that rationale, a sentencing court should consider “all the facts and circumstances of a case in deciding whether a crime is a ‘non-violent offense’ ” under § 5K2.13. Chatman, 986 F.2d at 1453. Once we conclude that we erred in Rosen by restricting “non-violent offense” to the definition of “crime of violence,” we need no longer tether our § 5K2.13 analysis to the definition in § 4B1.2 that we have just rejected. This point is best illustrated by Judge Easter-brook in his dissent in Poff:
As the Commission was at pains to establish in § 4B1.2, whether a crime is one “of violence” depends on its elements and not on the defendant’s conduct, so that an unrealized prospect of violence make the crime one of violence. This is an abnormal sense, a term of art. It took a detailed definition to make it so. Then comes § 5K2.13, in which “non-violent offense” appears without elaboration or cross-reference. Best to read these words in their ordinary sense rather than as tied to the term of art in § k.Bl.2. A “non-violent offense” in ordinary legal (and lay) understanding is one in which mayhem did not occur. The prospect of violence (the “heartland” of the offense, in the guidelines’ argot) sets the presumptive range; when things turn out better than they might, departure is permissible.
Poff, 926 F.2d at 594 (citation omitted) (emphasis added).
One of the purposes of the Sentencing Reform Act was to increase uniformity in sentencing by reducing disparities in sentencing. See U.S. Sentencing Guidelines Manual, ch. 1, pt. A, at A3 (U.S.S.G.). However, another important purpose was to increase proportionality in sentencing by imposing different sentences for crimes representing different levels of culpability. Id. To reconcile these seemingly contrary goals, the Commission, inter alia, provided for departures outside of the guideline range. See U.S.S.G. § 5K2.0. A policy that restricts departures based solely upon the elements of an offense is inconsistent "with the Commission’s attempt to apportion sanctions based upon culpability. Although we may properly conclude that one who commits a more serious crime is more culpable than one who commits a less serious one, that equation does not work where the more serious crime is committed by one who is less culpable because of a reduced mental capacity. “The criminal justice system long has meted out lower sentences to persons who, *555 although not technically insane, are not in full command of their actions.” Poff, 926 F.2d at 594 (Easterbrook, J., dissenting). Moreover, “[s]carce resources and prison space achieve greater deterrence when deployed against those who are most responsive to the legal system’s threats and who pose the greatest danger if not deterred.” Id. at 595.
Thus, in Chatman, which the majority here cites with approval, see Maj. Op. at 589, the court held that a defendant was eligible for a downward departure under § 5K2.13 even though he (like Askari) came before the sentencing court convicted of bank robbery. There, the district court had opined that the defendant was ineligible for a § 5K2.13 departure because he had given a teller a threatening note during the bank robbery. The sentencing court concluded that the defendant’s conduct therefore amounted to a crime of violence. Id. at 1447. The Court of Appeals for the D.C. Circuit relied upon Judge Easterbrook’s dissent in Poff and reversed. The court reasoned that § 5K2.13 vested a sentencing court with broad discretion to consider all the relevant facts concerning the offense because the Commission’s purpose was “to treat with lenity those individuals whose ‘reduced mental capacity’ contributed to [sic] commission of a crime.” Id. at 1452.
In contrast to the purposes of section 4B1.2, the point of section 5K2.13 is to treat with leniency those individuals whose reduced mental capacity contributed to commission of a crime. Such lenity is appropriate in part because, as Judge Easterbrook points out, two of the primary rationales for punishing an individual by incarceration—desert and deterrence— lose some of their relevance when applied to those with reduced mental capacity----
Considered in this context, the term “non-violent offense” in section 5K2.13 refers to those offenses that, in the act, reveal that a defendant is not dangerous, and therefore need not be incapacitated for the period of time the Guidelines would otherwise recommend. A determination regarding the dangerousness of a defendant, as manifested in the particular details of a single crime that he or she has committed, is best reached through a fact-specific investigation.
Id. (citations omitted).
Likewise, the Court of Appeals for the Ninth Circuit in United States v. Cantu was persuaded that a sentencing court’s inquiry into a defendant’s eligibility under § 5K2.13 should be undertaken with a view toward lenity. 12 F.3d 1506, 1510 (9th Cir.1993) (citation omitted). There, the court agreed with the analysis in Chatman, and noted that “[l]enity is appropriate because the purpose of § 5K2.13 is to treat with some compassion those in whom a reduced mental capacity has contributed to the commission of a crime.” Id. Although the court in Cantu was concerned with whether post-traumatic stress disorder could cause reduced mental capacity under the Guidelines not with whether the defendant committed a “non-violent offense,” the court recognized that fact-specific inquiries must be undertaken to determine both the defendant’s mental condition and the circumstances of the offense. See also, United States v. McBroom, 124 F.3d 533, 547 (3d Cir.1997) (“Section 5K2.13 is intended to create lenity for those whose significantly reduced mental capacity cause them to commit the offense of conviction.”).
Thus, I conclude that Askari is not ineligible for a § 5K2.13 departure solely because of his robbery conviction. The record shows that, although Askari had his hand underneath his shirt when he ordered the bank teller to give him money, two bank employees chased him from the bank. I submit, therefore, there is a genuine issue as to just how frightening or intimidating he was during the commission of the crime. However, I do not minimize the intimidation of the bank teller whom Askari confronted. See Maj. Op. at 539. Instead, the teller’s reaction should be assessed along with all of the other evidence in concluding whether, based upon the totality of the circumstances, Askari committed a “non-violent offense” under § 5K2.13. A sentencing court should make that determination independently of the definition contained in § 4B1.2 (which, as noted above, includes the elements of the offense). Bar *556 ring other considerations, a defendant’s eligibility for a § 5K2.13 departure can be determined only after the completion of such an individualized inquiry.
II.
Despite my disagreement with the conclusion of the majority of my colleagues, I agree with the majority’s ultimate decision to affirm the sentence because there are additional considerations under the departure provision. Section 5K2.13 is not only restricted to persons whose offense is non-violent, it also requires that “a defendant’s criminal history does not indicate a need for incarceration to protect the public.” See U.S.S.G. § 5K2.13. Here, the district court noted that Askari had a long history of crime, including violent crime. (App. at 56a.) Therefore, I agree that regardless of whether or not the bank robbery in this case is classified as a “nonviolent offense,” Askari is ineligible for the departure because his criminal history does suggest a need to protect the public. Thus, I concur in the judgment of the majority.
GARTH, Circuit Judge,
concurring:
I agree that the order of the district court should be affirmed. However, I reach this result by relying on the logic and common sense of Judge Seitz’s opinion for our court in United States v. Rosen, 896 F.2d 789 (3d Cir.1990), and its conclusion that the term “non-violent offense” cannot mean something other than the opposite of a “crime of violence.”
Rosen teaches that a defendant who has committed a “crime of violence” according to USSG § 4B1.2(a) is not eligible for a downward departure for commission of a “nonviolent offense” with reduced mental capacity under USSG § 5K2.13. See id. at 791. Because Askari was convicted of a “crime of violence,” namely bank robbery, he is obviously ineligible to receive the grant of a downward departure authorized by § 5K2.13 and the order of the district court imposing a sentence of 210 months in prison should be affirmed.
The court today correctly affirms the order of the district court, but on its path to doing so, rejects Rosen. My colleagues take the position that the “crime of violence” definition of USSG § 4B1.2(a) should not be used to determine whether a defendant has committed a “nonviolent offense” according USSG § 5K2.13. For essentially those reasons stated by the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits, I do not find this position persuasive. See United States v. Mayotte, 76 F.3d 887, 889 (8th Cir.1996); United States v. Poff, 926 F.2d 588, 591-93 (7th Cir.1991) (en banc); United States v. Russell, 917 F.2d 512, 517 (11th Cir.1990); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir.1989); United States v. Borrayo, 898 F.2d 91, 94 (9th Cir.1989); see also United States v. Chatman, 986 F.2d 1446, 1454-55 (D.C.Cir.1993) (D.H.Ginsburg, J., concurring).
In light of the many opinions on this issue already found in the Federal Reporter, I feel no need to rehash the familiar arguments in favor of Rosen[3] However, our court’s inability to agree on a standard to replace Rosen provides a new perspective from which to appreciate its strength.
Having agreed to reject Rosen’s teaching that a “nonviolent offense” is defined by § 4B1.2(a), my colleagues have diverged in their efforts to come up with a new definition. Reaching back to first principles of “modern criminology,” the majority has promulgated a definition of “non-violent offense” that it believes will respond to “the need for the sentence imposed to reflect the seriousness of the offense, to protect the public, and *557 to provide just punishment.” Maj. Op. at 547. Under the majority rule,
departures under USSG § 5K2.13 exclude conduct that involves actual force, threat of force, or intimidation, the latter two measured under a reasonable person standard. Therefore, “non-violent offenses” under USSG § 5K2.13 are those which do not involve a reasonable perception that force against persons may be used in committing the offense.
Maj. Op. at 549 (emphasis added). Accordingly, the district court must examine “the elements of the crime and the surrounding conduct” to determine whether there was actual force or a reasonable perception of a threat of force.
In their concurrences, Judge Stapleton and Judge McKee offer different approaches. Following conviction of a crime involving threats of violence that were not executed, Judge Stapleton would have the district court look to the underlying criminal statute and the relevant section of Chapter 2 of the Guidelines. If the district court could discern from these texts an intent to award lighter sentences to defendants who were unlikely to carry out their threats of violence, Judge Stapleton would allow a defendant who appears unlikely to have carried out a threat of violence to be eligible for a downward departure under § 5K2.13. Judge McKee offers yet another approach to defining “non-violent offense.” In his concurrence, Judge McKee advocates a totality of the circumstances test, in which a district court would be required to conduct an individualized inquiry into the specifics of the defendant’s conduct to determine whether it constituted a “non-violent offense.”
As I see it, our court’s inability to agree on a definition of “non-violent offense” in § 5K2.13 illustrates the wisdom of Rosen. By utilizing § 4B1.2(a), Rosen harnessed the Sentencing Commission’s efforts to delineate the boundaries between violent and non-violent conduct. The Commission produced a clear rule. When linked to § 5K2.13 by Rosen, the result was simple and straightforward guidance that produced sensible results: defendants convicted of offenses involving the use, attempted use, or threatened use of physical force against a person, or whose behavior presented a serious potential risk of physical injury to others, were ineligible for a reduced sentence due to diminished capacity. By rejecting Rosen, our court has created the. need to fashion a standard that at best can only replicate the efforts of the Commission codified at § 4B1.2(a).
I do take some solace in the fact that the majority’s new standard for evaluating departures appears to do just that. Indeed, it seems that the majority has gone out of its way to reject Rosen in theory but has embraced it in fact. Looking at the majority’s new definition of “non-violent offense,” I am hard pressed to think of a ease in which the definition would produce a result different from Rosen: that is, when a defendant’s action would not involve “actual force, threat of force, or intimidation, the latter two measured under a reasonable person standard,” but nonetheless would qualify as a “crime of violence” according to USSG § 4B1.2(a).
The court’s attempt to conjure up such an example appears in part HID of the majority’s opinion. There, the court imagines extortion by a public official in violation of the Hobbs Act. In order to come within the court’s new standard, a public official with a diminished mental capacity not the result of voluntary intake of alcohol or drugs, acting under color of right, would have to extort funds in violation of the Hobbs Act in a way that did not involve a threat of force, as judged by a reasonable person. In such a case, the court hypothesizes, that official would be eligible for a § 5K2.13 departure under the court’s new standard but not under Rosen.
I have never heard of such a prosecution. Nor have I been able to locate any published reports of one. Indeed, as the dissent notes, it is not even clear that the majority’s rule would produce a different result than Rosen given such a set of facts. See Dissenting Op. at n. 2. Thus, it appears that the majority has rejected Rosen in theory but not in substance: it has fashioned from first principles a new rule that appears to mirror Rosen in every set of facts that has been known to arise. This being so, I see no reason to *558 abandon our Rosen rule, with which five other circuits have agreed.

. I use the term "bank robbery” in the traditional sense. Traditional bank robbery is proscribed by the first paragraph of 18 U.S.C. § 2113(a) which provides:
[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the case, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.
While it has been suggested that a public official may be able to commit bank robbery by "extorting” bank funds without a threat of violence, I would not regard this as traditional bank robbery and I would take no position on the application of § 5K2.13 in such a case.

. This is, of course, consistent with the obligation of a sentencing judge to accept for sentencing purposes the facts necessarily implicit in the jury’s verdict. United States v. Boggi, 74 F.3d 470, 478-79 (3d Cir.1996) ("the district [court] ... properly reasoned that 'a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict.' ") (quoting from United States v. Weston, 960 F.2d 212, 218 (1st Cir.1992)). While this approach to U.S.S.C. § 5K2.13 produces the same result in a bank robbery case as that reached in Rosen, it is analytically distinct and will produce different results in other situations. Under this approach, “nonviolent offense” as used in U.S.S.G. § 5K2.13 will (1) exclude from the scope of that section (i.e. exclude from consideration for a departure based on diminished capacity) offenses that would not be "crimes of violence” under U.S.S.G. § 4B1.2(1), as where force against the person of another or the threat thereof is not an essential element (e.g., transportation for purposes of prohibited sexual conduct), but such force or threat thereof is in fact used, and will (2) include in the scope of that section (i.e., include as candidates for such a departure) offenses that would be "crimes of violence” under U.S.S.G. § 4B 1.2(1), as where the offense is burglaiy and no force against the person of another or threat thereof is employed.

. Title 18 U.S.C. § 2113(a) provides for a maximum imprisonment of 20 years. Title 18 U.S.C. § 2113(d) provides:
Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.
On its face, this can be read as punishing bank robbers who engage in actual violence—specifically, assault—during the commission of their crime more severely than those who only threaten violence. This is not the correct reading of § 2113(d), however. In Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), the Supreme Court held that subsection (d) requires more than an assault and that “ ‘the phrase ‘by the use of a dangerous weapon or device' must be read, regardless of punctuation, as modifying both the assault provision and the putting in jeopardy provision.’ ” Id. at 11-12 n. 6, 98 S.Ct. at 912-13 n. 6. Hence, the goal of § 2113(d) is not to punish more severely the actual use of violence in bank robberies under § 2113(a), but rather to punish more severely “the use of a dangerous weapon or device” in such situations. 18 U.S.C. § 2113(d).

. U.S.S.G. § 2B3.1 does provide a specific offense characteristic increase when violence results in personal injury but not for violence per se.

. 18 U.S.C. § 2113(a) provides, in part, that:
(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

. See United States v. Watts, — U.S.-, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (sentencing court may consider conduct of which the jury acquitted a defendant in imposing a sentence following a conviction); United States v. Baird, 109 F.3d 856 (3d Cir.), cert. denied, — U.S.-, 118 S.Ct. 243, 139 L.Ed.2d 173 (1997) (Guidelines allow a defendant to be sentenced based in part upon conduct contained in counts of an indictment that were dismissed pursuant to a plea bargain).

. Briefly, however, the pro -Rosen arguments may be summarized as follows. First, common sense dictates that a "non-violent offense” is the converse of a "crime of violence.” Second, the parallel structure of § 4B1.1 and § 5K2.13 suggests that the same definition should be used to assess whether the violent nature of a defendant’s crime should support a modification of the defendant’s sentence. Third, the Guidelines should be read as a whole, and when the same word appears in related sections, we should assume that the word carries the same meaning in both. Fourth, the term "crime of violence” is a broad phrase that appears in other sections of the Guidelines apart from § 4B1.1. See, e.g., USSG §§ 2K2.1, 2K1.3, 4A1.1. Its meaning therefore can be exported to § 5K2.13 as well as to these other sections.