**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Armondo R. WALTER, Defendant–**
**Appellant.**

No. 00–10384.

United States Court of Appeals,
Ninth Circuit.

Submitted June 14, 2001*

Filed July 18, 2001

Shawn Halbert, Assistant Federal Public Defender, San Francisco, California, for the defendant-appellant.

Michael Wang, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, LAY** and BOOCHEVER, Circuit Judges.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

LAY, Circuit Judge:

## I. Background

Armondo Walter believed that Ronald Merrit, Jr. stole several hundred dollars from him. To get revenge, Walter sent a letter addressed to President Clinton, signed with Merrit's name, including violent threats against the President and his family. The subsequent investigation led to Walter, who readily admitted that he sent the letter. He explained that he did not wish to harm the President but only wanted to cause Merrit trouble. Walter eventually pleaded guilty to several crimes involving threatening the President. On appeal, Walter challenges the 41 month sentence he received.[1]

At sentencing, Walter asked the district court to take into account his long and tragic history of childhood abuse. His father was an alcoholic who regularly beat him as a child, once sending him to the hospital with a broken nose. His mother once cut him with a knife and encouraged him to use drugs and alcohol at an early age. Most serious, his older cousin sexually abused Walter at a very young age, even forcing him to perpetrate acts of sexual violence against other boys, including Walter's own brother. Due in part to this early abuse, Walter's early use of alcohol and marijuana blossomed into a full-scale crack cocaine and alcohol addiction. He spent much of the 1990s in jail for drug and related theft charges.

Walter argued to the district court that his history of abuse should warrant a downward departure for two reasons. First, his extraordinary history of childhood abuse should independently warrant a downward departure. Second, because of his childhood abuse, he had a diminished capacity under U.S.S.G. § 5K2.13.[2] The Government argued that Walter's childhood abuse was not an appropriate ground for departure, attacking his credibility as well as the conclusions of Dr. Arvalea Nelson, an expert who submitted a psychological evaluation for Walter. Walter asked for an evidentiary hearing so he could support his own description of his abuse as well as Dr. Nelson's conclusions.

The district court refused to order an evidentiary hearing and denied a downward departure on either of the grounds suggested by Walter. The court refused to grant a downward departure on the grounds of childhood abuse because when Walter was thirteen years old, he struck back, knocking his father down when the latter attempted to assault him. This suggested to the court that "he was able to fend for himself at ... a time where he would similarly be ... in a position of being helpless." Thus, the court concluded that there were "inconsistencies in the factual record from the opinion and diagnosis that's arrived at by Dr. Nelson." The court reasoned that this inconsistency meant that Walter did not "establish that the physical and emotional abuse is such that it is atypical in this matter." Therefore, the court concluded no downward departure was appropriate.

---

1. Walter's sentence was at the low end of the guideline range. The guidelines under which Walter was sentenced sets forth a range from 41–51 months. *See U.S.S.G.* § 5A.

2. The relevant portion of § 5K2.13 reads as follows:
   A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart ... if ... (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence....

The district court further refused to depart under § 5K2.13. Although it accepted Dr. Nelson's conclusion that Walter's emotional difficulties influenced his decision to commit this crime, the court also noted that a psychological evaluation done on Walter in 1996 mentioned that he had a tendency to be "manipulative." [3] Thus, although the court accepted that there was a connection between Walter's emotional disturbance and his crime, the court concluded that Walter had not established by a preponderance of the evidence that "he was acting under the aegis of the emotional psychological overlay in a way that would give rise to a basis to depart under 5K2.13." The court went further, however, and analyzed § 5K2.13(2). It concluded that the defendant's actions represented a serious threat of violence, notwithstanding the defendant's testimony that he had no actual intent to use violence.

On appeal, Walter argues that the district court erred by not departing downward on the ground of his extraordinary history of abuse, by denying a downward departure under § 5K2.13 for diminished capacity, and by failing to provide a hearing to substantiate the connection between Walter's history of abuse and his criminal conduct.

## II. Discussion

■ A district court's interpretation of the Sentencing Guidelines is reviewed de novo while its factual findings are reviewed for clear error. *See United States v. McAninch*, 994 F.2d 1380, 1383 (9th Cir.1993). The Sentencing Guidelines provide that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.3. This circuit has held that this section includes the impact of childhood abuse on the offender. *See United States v. Roe*, 976 F.2d 1216, 1218 (9th Cir.1992). Therefore, the psychological effects of childhood abuse can only be considered by a sentencing court if such abuse was "extraordinary." *Id.* This court reviews a district court's factual determination that abuse was not extraordinary for clear error. *See id.* at 1217.[4]

■ The combination of brutal beatings by his father, the introduction to drugs and alcohol by his mother, and, most seriously, the sexual abuse he faced at the hands of his cousin, appear to us to be the type of extraordinary circumstances that may justify the consideration of the psychological effects of childhood abuse. *See Roe*, 976 F.2d at 1218.

The district court appears to have rejected Walter's claims of extraordinary abuse. We disagree and hold that the district court erred in finding that Walter's defense against his father's assault casts doubt on his story of abuse and Dr. Nelson's conclusions. The simple fact that when he was thirteen Walter defended himself against his father's attack does not appear to us to be in conflict with Walter's alleged history of prior abuse or Dr. Nelson's conclusions.

■ Moving to the § 5K2.13 issue, the district court accepted that there was a connection (as suggested by Dr. Nelson)

---

3. This 1996 report was completed by Dr. Anita Gilbert. Dr. Gilbert's report corresponded with Dr. Nelson's report in many ways, describing Walter's history of childhood abuse and drug addiction. The report mentioned, however, that Walter had a tendency to be "manipulative."

4. As emphasized by this court's decision in *Roe*, 976 F.2d at 1218 n. 1, we are not reviewing the district court's discretionary decision not to depart downward. As in *Roe*, we are reviewing a factual finding which directly affected the district court's exercise of discretion.

between Walter's history of abuse and his crime, but decided that the 1996 report's reference to his tendency to be "manipulative" cut against Dr. Nelson's conclusion. We have difficulty in accepting that this isolated reference in the 1996 report somehow undermined Dr. Nelson's conclusions. We further believe the district court erred in determining Walter's crime constituted a "serious threat of violence" under § 5K2.13(2).[5] All of the evidence in this case shows that Walter did not possess any real intent to cause physical harm to the President or any other person.[6]

Although we believe that the district court's proffered reasons for rejecting Walter's suggested departures were erroneous, it is not appropriate for this court to grant the departures. We therefore reverse the district court's decision and remand the case with instructions to grant Walter an evidentiary hearing so that he can substantiate his claims of abuse and his expert's conclusions. After this hearing, the district court is free to reevaluate Walter's claims.

We therefore REVERSE the district court's decision and REMAND this case for appropriate further proceedings.

REVERSED and REMANDED.

---

5. Although the record is unclear on this point, the district court appears to have treated § 5K2.13(2) as a factor to be evaluated when determining whether the defendant had a diminished mental capacity. This is incorrect. A court only gets to § 5K2.13(2) when it has determined that the defendant suffers from a diminished capacity. Under § 5K2.13(2), a defendant who has a diminished capacity is not eligible for a downward departure if his offense constitutes a serious threat of violence. The Government urges that the district court made an independent determination that the defendant did not have a diminished mental capacity under § 5K2.13, and that the defendant's actions constituted a serious threat of violence under § 5K2.13(2). As noted above, our reading of the record suggests otherwise. Due to the district court's error, we therefore deem it appropriate to consider the district court's conclusion that Walter did not suffer from a diminished capacity.

6. Indeed, the district court admitted as much when it concluded that there was a serious threat of violence "notwithstanding what the defendant's intent as stated was."