RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

HUNTER ALLEN LOOS,

*Defendant-Appellant*.

┐
│
│
> No. 22-1629
│
│
┘

─────────────

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:21-cr-00005-1—Hala Y. Jarbou, Chief District Judge.

Decided and Filed:  May 1, 2023

Before:  SUTTON, Chief Judge; BATCHELDER and MURPHY, Circuit Judges.

─────────────

### COUNSEL

**ON BRIEF:**  Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant.  Andrew Byerly Birge, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────

### OPINION

─────────────

SUTTON, Chief Judge.  Consumed by a toxic mixture of mental illness and drug addiction, Hunter Loos stabbed his mother to death, drove her body to a nearby trail, doused it with gasoline, and set her body on fire.  He pleaded guilty to second-degree murder, and the district court imposed a 240-month sentence.  Finding no error, we affirm.

I.

Loos and his mother, Renee Bressette, lived together on the Keweenaw Bay Indian Community reservation in Michigan's Western Upper Peninsula. She was a member of the tribe; he was not. Loos suffered from mental health issues and abused drugs. After an escalating series of physical altercations between the mother and son, presumably caused by these two challenges in his life, Loos decided to kill his mother. He stabbed her in the back and chest. Over the next 60 to 90 minutes, she bled to death in his presence, after which Loos took her body to a nearby trail. He doused the corpse with gasoline and lit it. After burning additional evidence, Loos visited a casino to purchase cigarettes.

Officers responded to a report of burning human remains. Aided by casino surveillance footage, they zeroed in on Loos. He confessed, and a grand jury charged him with first-degree murder and second-degree murder. 18 U.S.C. §§ 1111, 1151, 1152.

Psychologists diagnosed Loos with various forms of schizophrenia and drug addiction. The court found that Loos's mental illness did not impair his competence to stand trial.

At the urging of Bressette's daughters, the government permitted Loos to plead guilty to second-degree murder. The parties agreed to a minimum sentence of 180 months. The presentence report identified a Guidelines range of 180 to 210 months. It recommended a two-level upward departure based on "extreme conduct," U.S.S.G. § 5K2.8, and a 240-month sentence.

At sentencing, Loos and the government sought dueling departures. The court rejected Loos's request for a diminished capacity departure, U.S.S.G. § 5K2.13, finding him ineligible because his offense involved "actual violence" and "indicate[d] a need to protect the public," R.177 at 13, 38. The court granted the government's request for an extreme conduct departure, concluding that by "watch[ing] [the victim] die" and "cleaning up," Loos "prolonged her pain and/or humiliation . . . as she was dying." *Id.* at 37–39. The court rejected Loos's request for a downward variance. In the end, it imposed a 240-month sentence.

II.

*Diminished capacity departure.* Loos contends that the court improperly denied his request for a diminished capacity departure. We give fresh review to interpretations of the Guidelines. *United States v. Theunick*, 651 F.3d 578, 592 (6th Cir. 2011).

Under the Guidelines, a district court may grant a departure below the applicable Guidelines range if "the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13. What this provision gives, however, it takes away if any of the following exceptions apply:

> (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

At issue today is the second carve-out. It prohibits, to repeat, a diminished-capacity departure when "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." *Id.* The parties agree that the "facts and circumstances" of Loos's murder count as an "offense" that "involved actual violence." R.177 at 13. What separates the parties is whether that reality bars the departure in this case (as the government argues) or whether he is eligible for the departure so long as he was no longer a threat to the public at the time of sentencing (as Loos argues).

A violent offense will generally foreclose a departure. Breaking down the Guideline's three textual components shows why. Section 5K2.13 explains how the exception applies—by reviewing "the facts and circumstances of the defendant's offense." *Id.* It says why the exception applies—the "need to protect the public." *Id.* And it explains when the exception applies—when "the defendant's offense . . . involved actual violence or a serious threat of violence." *Id.* Because the "facts and circumstances" of Loos's offense "indicate a need to protect the public because the offense involved actual violence," he cannot receive the departure.

*Id.*  Nothing in the provision says that the district court must add a separate inquiry—whether the defendant at the time of sentencing *remains* a danger to the public.

Some history puts the current language in context.  The original version of the Guideline said this:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13 (1997).  In the context of this language, a circuit split arose over whether the categorical approach applied to this inquiry, namely whether the only job of the district court was to determine whether the offense amounted to a "crime of violence" under section 4B1.2 (the career offender Guideline) or whether it should conduct an inquiry into the actual facts and circumstances of the conviction.  *Compare United States v. Clements*, 144 F.3d 981, 982–83 (6th Cir. 1998) (holding that a "'crime of violence' under § 4B1.2(1)" cannot be "'non-violent' under § 5K2.13"), *with United States v. Chatman*, 986 F.2d 1446, 1450 (D.C. Cir. 1993) ("[T]he sentencing court has broad discretion under section 5K2.13 to examine all the facts and circumstances of a case to determine whether a particular offense was in fact 'non-violent.'").  With the 1998 amendment to section 5K2.13, the Sentencing Commission resolved the circuit split by telling district courts to look at the "facts and circumstances" of the offense, not to apply the categorical approach.

Our case law supports this interpretation.  *United States v. Lovejoy* explained that section "5K2.13(2) expressly provides that a court may not depart downward when the offense involved actual violence or a serious threat of violence."  42 F. App'x 741, 742 (6th Cir. 2002) (per curiam); *see United States v. Freeman*, No. 98-5474, 1999 WL 183454, at *2 (6th Cir. Mar. 16, 1999) (per curiam) ("[T]he sentencing court may not depart below the applicable guideline range if the facts of the defendant's offense involved actual violence or a serious threat of violence.").

Our sister circuits have come to the same conclusion. *See, e.g.*, *United States v. Askari*, 159 F.3d 774, 780 (3d Cir. 1998) (en banc); *United States v. Bowe*, 257 F.3d 336, 347 (4th Cir. 2001); *United States v. Bell*, 371 F.3d 239, 246 n.21 (5th Cir. 2004) (per curiam); *United States v. Anderson*, 547 F.3d 831, 831–32 (7th Cir. 2008); *United States v. Myers*, 503 F.3d 676, 685 & n.3 (8th Cir. 2007); *United States v. Pizzichiello*, 272 F.3d 1232, 1238 (9th Cir. 2001); *United States v. Constantine*, 263 F.3d 1122, 1126 (10th Cir. 2001); *United States v. Irey*, 612 F.3d 1160, 1219 (11th Cir. 2010) (en banc); *see also United States v. Gorsuch*, 404 F.3d 543, 548 (1st Cir. 2005) (suggesting that a violent offense precludes eligibility).

*United States v. Riggs* is not out of step with this procession. 370 F.3d 382 (4th Cir. 2004), *vacated by* 543 U.S. 1110 (2005), *reinstated by* 410 F.3d 136 (4th Cir. 2005). The court *reversed* the grant of a diminished capacity departure, concluding both that the defendant's offense involved "a serious threat of violence" and that he remained a threat to the public. *Id.* at 385–87. Later cases confirm as much. *See, e.g.*, *United States v. McDonald*, 444 F. App'x 710, 714 (4th Cir. 2011) (per curiam) (interpreting section 5K2.13 to prohibit a departure where the defendant "poses a risk to the public because the offense involved a serious threat of violence").

Loos, notably, does not identify a single case that embraces his approach. Even so, he remains concerned that our interpretation reads the phrase "a need to protect the public" out of the Guideline. U.S.S.G. § 5K2.13. That phrase, he says, indicates that the Guideline "looks at different time periods" and requires the district court to determine whether the offender remains a threat to the public in "the present" or even in "the future when [his] sentence is completed." Appellant's Br. 23–24. He is mistaken. The Guideline turns on the offense, not the offender. And its exclusive focus on "the facts and circumstances of the defendant's offense" forecloses any present-sense inquiry. U.S.S.G. § 5K2.13.

That leaves a different possibility, one not raised by Loos. The Guideline might pose two backward-looking questions: whether the "facts and circumstances of the defendant's offense" involved "actual violence or a serious threat of violence" *and* whether they demonstrated a "need to protect the public." *Id.* Perhaps a hypothetical offense could involve actual violence or a serious threat of violence but not indicate a need to protect the public. Or maybe offenses that involve actual violence or a serious threat of violence always "indicate" a need to protect the

public.  *Id.*  We need not resolve that interpretive question here.  The district court found that the facts and circumstances of Loos's crime involved "actual violence" and "indicate[d] a need to protect the public," checking both boxes.  R.177 at 38–39.  That is enough to decide this case.  We leave for another day whether the backward-looking inquiry has distinct components.

*Sentence explanation.*  Loos separately claims that the court inadequately explained the sentence and upward departure.  Abuse-of-discretion review applies to this argument.  *United States v. Potts*, 947 F.3d 357, 370–71 (6th Cir. 2020).

No such problem arose.  The court correctly calculated the Guidelines range.  After hearing arguments and acknowledging its sentencing obligations, the court noted the competing arguments.  On the one side, it found that Loos watched his mother die "for potentially more than an hour."  R.177 at 38.  By "clean[ing] up" and "watching her die and waiting for her to die," Loos prolonged her pain, agony, and humiliation, all while "add[ing] a level of cruelty" to an already cruel murder by standing by without regret as she bled to death.  *Id.* at 37–38.  That "heinous" conduct, together with deterrence and the need to protect the public, cut against Loos's requests for leniency.  *Id.* at 37–39.  On the other side, the court described Loos's difficult childhood, his mental health challenges, and his positive response to addiction treatment in prison.

The court then proceeded to discuss each of the section 3553(a) factors.  Having accounted for all of the factors and both sides of the balance, the court denied Loos's requested variance, granted the government's request for an upward departure premised on "extreme conduct," U.S.S.G. § 5K2.8, and imposed the 240-month sentence.  All told, the court adequately explained its sentence.  *United States v. Zabel*, 35 F.4th 493, 505 (6th Cir. 2022).

Resisting this conclusion, Loos argues that the court failed to explain why it imposed the 240-month sentence rather than "a higher or lower sentence."  Appellant's Br. 29.  But the modest explanation requirement is not a strict tailoring requirement.  Having explained its choice, the court had no duty to explain why it "reject[ed]" all manner of "alternative sentences."  *United States v. Sexton*, 889 F.3d 262, 265 (6th Cir. 2018).  A court is under "no obligation to clarify why [the] particular sentence was appropriate *rather than* an alternative."  *Id.* at 266.

Loos persists that the court failed to consider his mental health in imposing the sentence. Not true. The court twice stated that it had read Loos's psychological report. After listening to arguments addressing the topic, it explicitly took "into account" Loos's "mental health history" while weighing all of the section 3553(a) factors together and explaining its sentence. R.177 at 35, 39.

*Substantive reasonableness.* Loos claims that the court put too much emphasis on the severity of his offense and put too little emphasis on his mental health, leading to a sentence that was too long. We review the length of a sentence for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

No such problem arose. Loos's difficult childhood and mental health challenges, the court noted, mitigated his culpability. But the "extreme" nature of his offense, the ongoing "need to protect the public," and the importance of deterrence cut the other way. R.177 at 38–39. After "balanc[ing]" "all the factors," it rejected Loos's request for a downward variance and imposed a 240-month sentence. *Id.* at 39–40. The court acknowledged that the case was "one of the most difficult" it had handled. *Id.* at 33. It did not abuse its considerable discretion in weighing the sentencing factors differently from how Loos would have weighed them. *See Zabel*, 35 F.4th at 508.

We affirm.